STATE OF CONNECTICUT *v.* CHARLES WARHOLIC
(AC 23464)

Bishop, West and Dupont, Js.

Argued May 25—officially released August 31, 2004

*Richard Emanuel*, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence D. Mariani*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. This case requires us to revisit the proper boundaries of prosecutorial advocacy. The defendant, Charles Warholic, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Stat-

utes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21. The defendant claims that (1) there was insufficient evidence to support his conviction, (2) he was denied his right to a fair trial due to prosecutorial misconduct and (3) the court incorrectly permitted the state to cross-examine him about a witness' veracity.[1] We reverse the judgment of conviction and remand the case for a new trial.

The jury reasonably could have found the following facts. E was born in 1986. In 1990, when E was four years old, his parents were divorced and his father moved out of their house. After the divorce, E lived with his mother, his two older sisters, L and B, and the defendant, who was his mother's boyfriend. In February, 1992, when E was five years old, his family and the defendant moved to a rented house in Watertown.

According to E, the defendant began sexually assaulting him approximately one year after they moved to the rented house. E had a clear memory of the first incident of abuse. According to E, when his mother was out of the house, the defendant told him to come upstairs to a bathroom. Once upstairs, the defendant closed the bathroom door and told E to take his clothes off and to get into the shower. The defendant then stood naked in the shower with E and had E kneel beneath the shower and face him. At the behest of the defendant, E put his mouth on the defendant's penis and moved his head back and forth. That lasted two minutes until the defendant ejaculated. E then put his hands on and rubbed the defendant's penis. The entire incident lasted five minutes. E was instructed never to tell anyone about the incident.

---

[1] Because the defendant's second claim is dispositive, we need not address the third claim, as it is not likely to occur on retrial. We address the sufficiency of the evidence claim, however, because a determination of evidentiary insufficiency would entitle the defendant to a judgment of acquittal.

According to E, incidents similar to the first one occurred on a regular basis, approximately fifty to sixty times, until March or April, 1994. E testified that whenever he saw his mother pick up her blue notebook, he would go to his bedroom because he knew the defendant was going to sexually assault him. E's mother took her book with her when she left the house as part of her routine.

In March, 1999, E moved in with his father and his father's new wife, C, and her three children. C observed that during that time period, E was a quiet child who often misbehaved. In February, 2000, after E misbehaved, C told E that he would have to return to live with his mother. E begged her not to return him to his mother and eventually told her about the abuse by the defendant. E also told his father about the abuse. E and his father then gave statements to the police. The defendant was later arrested and charged accordingly.

Howard Krieger, a psychologist and an expert in child sexual assault cases, testified at the trial. Krieger, who did not treat E, described the general symptoms of sexually abused children, including the delayed reporting of such abuse. The defendant and the victim's mother testified on the defendant's behalf. According to the victim's mother, E and the defendant had a normal relationship, and she never witnessed the defendant acting in an inappropriate manner toward E. She denied ever bringing a blue notebook with her to meetings and noted that she rarely left E home alone with the defendant. The defendant testified that while E was living with him, he babysat the children infrequently, and he denied E's claims of sexual assault.

The state presented two rebuttal witnesses, J, a friend of the victim's mother, and E's sister, B, who both resided in the rented house. J testified that she observed the defendant and E on numerous occasions, and that

E appeared withdrawn and afraid of the defendant. B testified that her mother was out of the house on a regular basis and would take her notebook with her to certain meetings that she attended.

The defendant was convicted subsequently on both counts of the information and sentenced to a total effective term of twelve years incarceration, followed by twenty years of probation. This appeal followed.

I

The defendant first argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Specifically, the defendant argues that the evidence was insufficient to establish that the alleged abuse occurred between 1993 and 1994. We disagree.

The following additional facts are necessary to our resolution of the defendant's claim. The original information, which was filed prior to the trial, alleged that the abuse occurred between 1992 and 1994. At the completion of the evidence, but before the case was submitted to the jury, the state was granted permission to file a substitute long form information that alleged that the sexual assaults occurred between July 1, 1993, and May 31, 1994. With those additional facts set forth, we address the defendant's claim.

Our standard of review for a claim of insufficient evidence is well established. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Servello*, 80 Conn. App. 313,

318, 835 A.2d 102 (2003), cert. denied, 267 Conn. 914, 841 A.2d 220 (2004).

The defendant does not challenge the sufficiency of the evidence that supports the jury's finding that the sexual assaults occurred. Rather, he claims that the evidence does not establish that the sexual assaults took place during the time period alleged by the state. The issue before us, then, is whether the testimony supports the jury's conclusion that the defendant committed a sexual assault on E between July 1, 1993, and May 1, 1994. Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the testimony was sufficient to establish beyond a reasonable doubt that the events occurred between July 1, 1993, and May 31, 1994. As noted, E testified that the assaults occurred about one year after he moved to the rented house and ended between March and April, 1994. Testimony by E and his mother established that they moved to that house in February, 1992. Taking the testimony of E and his mother together, the jury reasonably could have concluded that the assaults took place within the time frame alleged by the state.

The defendant concedes that "construing [the evidence] in the light most favorable to the prosecution, the assaults commenced in early 1993 and ended by March or April of 1994." He argues, however, that because E stated on cross-examination that the assaults occurred "shortly after" they moved, as opposed to "one year after they moved," as he did on direct examination, E's testimony was "improbable and unconvincing." That argument lacks merit. First, we note that the statements are not facially inconsistent. Moreover, even if those statements could be construed as inconsistent, "[e]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can

. . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Wortham*, 80 Conn. App. 635, 642, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004). The evidence was sufficient to sustain the verdict.

## II

The defendant next claims that he was deprived of his due process rights to a fair trial by the egregious, wilful and repeated misconduct of the prosecutor. We agree.[2]

As a preliminary matter, we note that several of the defendant's claims were preserved through valid objections and a motion for a mistrial. To the extent that some of the defendant's claims are unpreserved, we will review them under the same rubric as we do preserved claims. See *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004) ("in cases involving incidents of prosecutorial misconduct that were not objected to at trial . . . it is unnecessary for the defendant to seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 [1989]").

"To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order

[2] The defendant also has requested that we exercise our supervisory powers as per *State* v. *Pouncey*, 241 Conn. 802, 811–12, 699 A.2d 901 (1997), to reverse the judgment, as the prosecutor in this case has been admonished numerous times for prosecutorial misconduct in similar circumstances. See *State* v. *Heredia*, 253 Conn. 543, 565, 754 A.2d 114 (2000); *State* v. *Dillard*, 66 Conn. App. 238, 246–50, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001); *State* v. *Moore*, 69 Conn. App. 117, 125–29, 795 A.2d 563, cert. denied, 260 Conn. 941, 835 A.2d 59 (2002); *State* v. *Bermudez*, 79 Conn. App. 275, 283–89, 830 A.2d 288, cert granted, 266 Conn. 921, 835 A.2d 61 (2003).

Notwithstanding the prosecutor's history of prosecutorial misconduct, we decline to exercise our supervisory powers, but rather we decide this case on the grounds set forth in the defendant's second claim, as previously noted.

to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 699–700, 793 A.2d 226 (2002).

Accordingly, claims of prosecutorial misconduct trigger a two-pronged inquiry. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial, an inquiry that in the present case necessarily will require evaluation of the defendant's other misconduct claims." (Internal quotation marks omitted.) *State* v. *Beaulieu*, 82 Conn. App. 856, 868, 848 A.2d 500, cert. granted on other grounds, 270 Conn. 908, 853 A.2d 524 (2004).

A

We must first determine "whether misconduct occurred in the first instance . . . ." (Internal quotation marks omitted.) Id. As the defendant's claims fall into five categories, we address each category in turn.

1

The defendant alleges that the prosecutor committed misconduct numerous times during closing argument to the jury by expressing his personal opinion concerning the evidence and by vouching for the credibility of the complaining witness, E.

As a preliminary matter, we note that the bounds of proper advocacy during closing argument are well

established. "The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 713.

Our review of the record leads us to conclude that the prosecutor violated the proscription set forth in *Singh* regarding the expression of personal opinions during closing argument by directly commenting on the credibility of E. The prosecutor stated: "How difficult it would have been as a thirteen year old boy to [admit performing oral sex on an adult]? That is so far out of the ballpark about what you can talk about to your father, I would argue, that you should consider that when you decide on credibility. Why would—why would [E] bring that upon himself unless it was true?" Later, in rebuttal argument, the prosecutor commented regarding E: "And again, final time I'll say it, there is only one explanation for why a young boy, thirteen years old, would say something like this, and the only reason he would say it is because it is true." The prosecutor also stated: "It's a pretty far stretch to think that [E] is kind of a—a mastermind behind making this up." "There is no other rational or reasonable explanation for what [E] said other than it's the truth." "The kid who was molested came in here and faced you all and said it." "You've sat here and listened to a victim. "You heard from the victim."

During closing argument, the prosecutor also expressed his personal opinion as to the credibility of the defendant and his key witness by stating: "So, why? Why would [the defendant and the defendant's witness] come in here and lie about what happened? Because they're trying to cover it up."[3] The prosecutor improperly commented on the guilt of the defendant when he twice referred to E as the victim[4] and when he stated: "There's only one explanation in this case that makes sense and, as difficult as it is to understand that, it happens, it's that the defendant did exactly what he's accused of."

Last, as to the defendant's claim regarding the prosecutor's expression of personal opinion, the state concedes, and we agree, that the statement by the prosecutor that the defendant has "got a lot to lose in this case" as compared with E, who had "nothing to gain by coming in here and telling the truth," was improper.

The state argues that all of those statements, except the one as to which the state conceded impropriety, were proper because a prosecutor is allowed to question whether a witness has a motive to lie, may occasionally use rhetorical devices and may appeal to the common sense of the jurors. See *State* v. *Thompson*, 266 Conn. 440, 458, 832 A.2d 626 (2003); *State* v. *Ceballos*, 266 Conn. 364, 402, 832 A.2d 14 (2003); *State* v. *Sherman*, 38 Conn. App. 371, 395, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). Unlike the situations in those cases cited by the state, the assertions in the present case by the prosecutor were not mere rhetorical devices, nor can they fairly be assessed as the prosecutor's simply asking the jury to determine whether certain witnesses had motives to lie or to be

[3] The court sustained the defendant's objection to that comment, instructing the jury to "ignore that comment."

[4] The prosecutor stated: "You've sat here and listened to a victim," and, "[y]ou heard from the victim."

truthful. Those statements, rather, were no more than veiled expressions of the prosecutor's view that E's testimony was truthful, that the defendant and his witnesses were lying, and that the defendant was guilty. Accordingly, those statements were improper.

2

The defendant next alleges that during closing argument, the prosecutor improperly appealed to the emotions of the jury. We agree. See *State* v. *Alexander*, 254 Conn. 290, 307, 755 A.2d 868 (2000) ("An appeal to the emotions of the jury may arise from the use of personal and degrading epithets to describe the defendant. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." [Citations omitted; internal quotation marks omitted.]). During closing argument, the prosecutor made the following comment regarding the defendant: "[T]he evidence proves that [the defendant] is the child molester that he's accused of being. They're out there. They're among us." Additionally, the defendant claims that the prosecutor made the following improper comment regarding E's mother: "If you think about why it took [E] so long to tell anybody, you can figure it out when you look at the facts of this case. Who was he going to tell? The only other adult in that house was his mother. His very own mother. And we know from the testimony here that when she was asked to come down to the state's attorney's office and talk about this case, she didn't come."

The state concedes, and we agree, that the prosecutor's reference to the defendant as a child molester who's "out there" and "among us" was improper, and his reference to the fact that the victim's mother would not give a statement at the state's attorney's office was

improper. Accordingly, we need not dwell on the impropriety of those statements except to affirm that they were improper.[5] See *State* v. *Stevenson*, supra, 269 Conn. 582.

3

The defendant also alleges that the prosecutor commented on matters that were not part of the record and misstated the record in argument to the jury. We are not persuaded.

Specifically, the defendant claims that during argument to the jury, the prosecutor stated: "[T]he defendant took the [witness] stand in this case as did [the victim's mother] and certainly, I think we could all agree that after you heard their testimony, there was no opportunity for the defendant to commit these acts because he was never home alone with the kids. That's what the mother said and, basically, that's what he said, and those two rebuttal witnesses this morning, I would argue to you, disprove that." The defendant asserts, and the record reflects, that neither he nor the victim's mother testified that he was never home alone with the children, but that such times were "seldom" or "infrequent." It is the defendant's claim that the difference between "seldom" or "infrequent" and "never" is a material variance and therefore, a misstatement of the evidence.

Additionally, the defendant claims that the prosecutor's argument regarding testimony about the attendance of the victim's mother at meetings and her use of a blue notebook did not faithfully mirror the testimony. Although we note that a prosecutor, in fulfilling his or her sworn duties, must confine the arguments to the

---

[5] The defendant also argues that the comment that he and his witness were "trying to cover it up" was an improper appeal to the emotions of the jurors. Having previously determined that this was improper; see part II A 1; we need not address that claim again.

evidence in the record; *State* v. *Binet*, 192 Conn. 618, 631, 473 A.2d 1200 (1984); our review of the record leads us to conclude that the prosecutor's argument did not refer to matters that were not in evidence, nor did it stray impermissibly from the trial testimony. Although some of the statements did not mirror the witnesses' testimony exactly, a prosecutor must be given wide latitude in arguing the evidence and the reasonable inferences that may be drawn from them. *State* v. *Rizzo*, 266 Conn. 171, 246, 833 A.2d 363 (2003). Thus, a prosecutor should not be reduced to having to parrot the evidence. Our review of the record leads us to the conclusion that although the prosecutor's comments in that regard may have stretched the bounds of his latitude to comment on the evidence, the prosecutor stayed within the permissible boundaries of advocacy in this instance. As such, that claim of misconduct fails.

4

Next, the defendant argues that the prosecutor improperly injected extraneous matters into the trial and invited the jury, impermissibly, to identify with E. We agree.

It is well established that the prosecutor should not inject extraneous matters into the trial, nor should the prosecutor encourage the jury to identify with the victim. See *State* v. *Watlington*, 216 Conn. 188, 193, 579 A.2d 490 (1990); *State* v. *Williams*, 204 Conn. 523, 545, 529 A.2d 653 (1987). The record is clear that the prosecutor violated those principles.

On two occasions, the prosecutor referred to E as a "cute little kid."[6] We agree with the defendant that this

---

[6] During closing argument, the prosecutor stated: "As I said to you before, I cannot explain why people do this. I don't know. I wish it never happened. I think we all do. That's not part of the case. I—I don't have to explain to you what could possibly be going on in someone's mind to possess them to do this to such a—a little kid. You have the—the—there's a picture in evidence [of] what he looked like at the time. He's a cute little kid. What would possess somebody to do that? I have no idea, but you know how these cases unfold."

gratuitous comment was intended only to elicit sympathy for E.

Additionally, the defendant claims that the prosecutor improperly made an appeal specifically intended to induce the male jurors to identify with E. During closing argument, the prosecutor stated: "Think back, especially the men, think back to when you were a young man, what the worst thing someone could say about you at age twelve or thirteen. What do you think your friends and family would have thought if the facts in this case came out about one of us? Would you want your friends, would you want your father to know that about you . . . . Again, this is the last time I'll say it, and I hope it sinks in, but to say that to your father. How hard would that be? You would have to have one whopper of a motive to make that up." We agree with the defendant that the prosecutor's repeated use of the words "you" and "your" evinced his intent to have the male jurors identify with E as a male victim of male sexual abuse. As such, it violated the proscriptions set forth in *Williams* and *Watlington* against inviting the jury to identify with a victim.[7]

### 5

The defendant also argues that on three occasions during cross-examination, the prosecutor committed

---

[7] The defendant also argues that the prosecutor improperly discussed the societal problem of child abuse. Specifically, the defendant argues that the following portion of closing argument was improper: "There's one thing I cannot do in this case. I cannot explain to you why someone could do this to a little boy. I can't. There's no explanation for it that any of us can understand, but I would ask you to use your common sense and just accept the fact that it does happen. I don't know why. I wish it never did. I can't explain to you why people would do something like that or why a person would do something like that."

The comments of the prosecutor were not an improper injection of extraneous matters; rather, they reflected the correct statement of law that motive is not an element that the state must prove beyond a reasonable doubt. See *State* v. *Coney*, 266 Conn. 787, 818–19, 835 A.2d 977 (2003). As such, they were not improper.

misconduct. We agree with the defendant and address each in turn.

The defendant first contends that during cross-examination, the prosecutor improperly compelled him to characterize the testimony of E. It is a well established rule that the prosecutor cannot ask a witness to comment on the veracity of other witnesses. On at least four occasions, the prosecutor asked the defendant why E would "make this up."[8] The prosecutor also inquired if "it [made] any sense to [the defendant] that [E] may have misinterpreted something [the defendant] did as sexual assault." Those questions violated the proscription expressed in *Singh* against asking a witness to comment on the veracity of another witness.

The defendant also argues that during cross-examination, the prosecutor improperly attacked his character and that of the victim's mother. We agree.

A prosecutor may not participate in character assassination of the defendant or his witnesses. See *State* v. *Williams*, supra, 204 Conn. 546. We agree with the defendant's claim that during cross-examination, the prosecutor denigrated his character and that of the victim's mother. Despite a previous ruling by the court

---

[8] The following are the relevant portions of the cross-examination of the defendant:

"[The Prosecutor]: Were you ever so mean to [E] that you think he would make up a story like this?

"[The Defendant]: Not that I can think of. No.

"[The Prosecutor]: And you told this jury that you never bathed him or showered with him, right?

"[The Defendant]: No, I did not.

"[The Prosecutor]: So, does it make any sense to you that he may have misinterpreted something you did as sexual assault?

[The court sustained the defendant's objection to that question.]

* * *

"[The Prosecutor]: Do you know any reason why [E] would make this up, of your own firsthand knowledge? . . .

"[The Defendant]: No."

that he could not inquire into the mother's attendance at Narcotics Anonymous meetings,[9] the prosecutor elicited testimony from her, intending to suggest that she had attended such meetings.[10]

Later, during the defendant's cross-examination, the prosecutor intimated that the defendant had a substance abuse problem by asking: "Do you recall what you told the department of children and families about your substance abuse during the time period of . . . ." We agree with the defendant that the prosecutor's

[9] Earlier in the trial, during the state's examination of E, the jury was excused, and the prosecutor indicated that he intended to ask E about his mother going to Narcotics Anonymous meetings. The purported intent of the testimony was to demonstrate that there were times that E's mother was not at home and that when she went to Narcotics Anonymous meetings she took a certain notebook with her, which signaled to E that he was going to be alone with the defendant. That testimony, in turn, would demonstrate that the defendant had the opportunity to sexually assault E during those absences. In colloquy, when the court asked the prosecutor if he wanted the jury to know that E's mother was going to Narcotics Anonymous meetings, he responded in the affirmative, suggesting that he wanted the jury to know that E was aware of where his mother was going. The court informed the prosecutor that although he would be permitted to demonstrate that E was familiar with his mother's routine and that "when certain things happened . . . he knew she was going to be out of the house, the prosecutor was not to elicit testimony concerning Narcotics Anonymous since it would be totally irrelevant and highly prejudicial by association." The court concluded: "[S]o, I'm sure that you can get what you want out of the witness without the details of where she was going."

[10] The following is the relevant portion of the cross-examination of the victim's mother by the prosecutor:

"[The Prosecutor]: Back in 1993 and 1994, okay, were you either drinking or using drugs that affected your ability to pay attention to what was going on in your house?

"[The Witness]: No, I was not.

"[The Prosecutor]: Did you ever have a blue notebook in your house that you brought to meetings?

"[The Witness]: Brought to meetings?

"[The Prosecutor]: Yeah, a blue spiral notebook that you brought to meetings?

"[The Witness]: No.

"[The Prosecutor]: No?

"[The Witness]: No."

explorations of the mother's attendance at "meetings" and the defendant's purported substance abuse problems were no more than attacks on their characters. As noted by the court, those questions nearly caused a mistrial and as such were improper.[11]

B

Having determined that during closing and rebuttal arguments and cross-examination, the prosecutor committed misconduct, we next turn to the question of whether the improprieties by the prosecutor so infected the trial that they violated the defendant's right to due process of law. "In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [our Supreme Court has] focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, supra, 204 Conn. 540. Regardless of whether the claims were preserved, we apply the *Williams* factors to determine if the defendant was deprived of a fair trial. See *State* v. *Stevenson*, supra, 269 Conn. 591. As the state does not argue that the defendant invited the misconduct, we will address only the remaining factors.

1

Centrality of the Misconduct to Critical Issues in the Case and Strength of the State's Case

We begin by emphasizing the centrality of the misconduct to the critical issue of the case. In that context,

[11] After the prosecutor asked that improper question, the court sua sponte excused the jury and then addressed the prosecutor as follows: "Whenever you are dealing with issues one step removed from the actual allegations and they're highly prejudicial, you're always on thin ice, so, you know, so,

we also review the strength of the state's case. See *State* v. *Thompson*, supra, 266 Conn. 481. In the present case, the credibility of E was central to the conviction. As conceded by the state, this case was a credibility contest between the defendant and E. There was no physical evidence of the abuse, nor was there any direct corroboration of E's testimony. There was one constancy of accusation witness, C, but her testimony was inconsistent with other evidence that on two occasions in 1999, E told two other adults that he had never been sexually abused. In that light, the state's case was weak and dependent, in large part, on the jury's assessment of the contrast in credibility between E and the defendant and the victim's mother. As noted, the prosecutor's misconduct consisted of bolstering E's credibility while denigrating the defendant's, asking the jury to identify with E, while impugning the defendant and inflaming the passions of the jury. In a weak case, dependent on the jury's assessment of the credibility of the witnesses, such misconduct cannot be viewed as incidental. Rather, it goes to the heart of the trial. See *State* v. *Alexander*, supra, 254 Conn. 308. (noting that " 'state's case was not particularly strong in that it rested on the credibility of the victim' "); see also *State* v. *Ceballos*, supra, 266 Conn. 416–17 ("without independent physical evidence to prove that the defendant had sexually assaulted [the child], or even that [the child] had been sexually assaulted at all, the significance of the state's attorney's improper conduct increases considerably").

2

Frequency and Severity of the Misconduct

We next consider the frequency and the severity of the misconduct. As the recent decisions by our Supreme

when you're dealing with these issues, you're always a half step away from a mistrial. Do you want to try this case over again and put that little boy through this all over again?"

Court illustrate, isolated instances of nonegregious misconduct will not warrant reversal. *State* v. *Santiago*, 269 Conn. 726, 733, 850 A.2d 199 (2004) (" '[defendant is not entitled to prevail when] the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial' "). In the present case, however, the misconduct was neither isolated nor benign. As noted, most of the prosecutor's misconduct related to witness credibility, the central issue in the case. Additionally, the court sustained a number of the defendant's objections to the prosecutor's questions and statements during closing argument, thereby indicating that the misconduct was severe. Cf. *State* v. *Thompson*, supra, 266 Conn. 480. Indeed, during the prosecutor's cross-examination of the defendant, the court threatened to declare a mistrial if the prosecutor asked any additional improper questions.[12] As such, the misconduct was severe. Although the defendant did not object to some instances of misconduct, in a case of this magnitude, in which credibility is the central issue, the failure to object cannot be dispositive as to severity of the misconduct. See *State* v. *Beaulieu*, supra, 82 Conn. App. 873. Additionally, the misconduct was pervasive throughout the trial, as it occurred during cross-examination and closing and rebuttal arguments.

3

Curative Instructions

Last, we consider the strength of the curative instructions given by the court. The state argues that any harm that flowed from the prosecutorial misconduct was mit-

---

[12] It is clear from the court's increasing frustration with the prosecutor during trial that the prosecutor's repeated misconduct brought this case to the edge of mistrial and that only due to the court's overriding concern for E's welfare was the case permitted to go to the jury. We fully appreciate the court's dilemma.

igated because the court sustained several objections and, at times, provided curative instructions to the jury. Additionally, the state correctly notes that as part of its general instructions, the court told the jury that the attorneys' arguments were not evidence and that the jury alone had the responsibility to assess the credibility of witnesses.

As argued by the state, we note that the court sustained three of the defendant's objections and instructed the jury to ignore the improper comments. The court also gave general instructions that the attorneys were marshaling the evidence and not expressing their personal opinion as to the evidence and that the jury alone should weigh credibility. In light of the weak case presented to the jury, the centrality of the misconduct to the main issue of credibility and the pervasive and severe nature of the prosecutor's misconduct, we conclude that in this instance, the court's instructions were insufficient to cure the harm caused by the prosecutor's repeated misconduct.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.