STATE OF CONNECTICUT *v.* TYRONE REID
(AC 23930)

Foti, Dranginis and Flynn, Js.

Argued September 9—officially released November 2, 2004

*Andrew S. Liskov*, special public defender, for the appellant (defendant).

*Joseph T. Corradino,* senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict,* state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Tyrone Reid, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (4), robbery in the first degree in violation of § 53a-134 (a) (4) and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that there was insufficient evidence (1) to submit the conspiracy to commit robbery in the first degree count to the jury,[1] (2) that he possessed the requisite intent to commit risk of injury to a child and (3) that he was present during the robbery. We disagree.

The jury reasonably could have found the following facts. Tyson Anderson was babysitting his girlfriend's three year old daughter during the morning of October 23, 2001, at his house in Bridgeport. At approximately 9 a.m., Anderson left his house to go to a nearby store to purchase a newspaper. While outside his house, Maria Vargas approached Anderson. Vargas asked Anderson if she could borrow some money. Anderson agreed, told Vargas to follow him to his house and asked her to wait outside while he got the money. Anderson entered his house, went into the bedroom and obtained the money from a safe. When Anderson returned from the bedroom, Vargas was standing in his living room, which was located off of the bedroom. Anderson gave Vargas the money and she left.

At approximately 11 a.m., Anderson went to check if the mail had arrived. When he opened the door, Marques

---

[1] In his brief to this court, the defendant's claim was briefed as one of instructional error. At oral argument, however, the defendant conceded that his claim was one of sufficiency of the evidence.

Goethe was standing in front of Anderson's house. Goethe asked Anderson if "the guy upstairs" was home. Anderson said that he was not and Goethe left. Approximately ten minutes later, Anderson again went to check if the mail had arrived. When Anderson opened the door, Goethe again was standing in front of Anderson's house. Goethe asked Anderson if he could use his telephone. Anderson informed Goethe that there was a telephone on the corner of the street and that Goethe could not use Anderson's telephone. Goethe then pulled out a shotgun and pointed it at Anderson, ordering him to get into the living room, where the child was watching television. While in the living room, Goethe pointed the shotgun at Anderson and the child.

Shortly after Anderson was ordered into the living room, the defendant entered the house and went directly into the bedroom. The defendant was unable to find the safe and Goethe ordered Anderson to go into the bedroom to show the defendant where it was located. When Anderson entered the bedroom, the defendant already had found the safe. The defendant then took the safe and left Anderson's house.

The defendant subsequently was convicted and sentenced to a term of twelve years imprisonment, execution suspended after nine years, and five years probation. This appeal followed.

On appeal, the defendant raises three unpreserved sufficiency of the evidence claims. "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted upon insufficient proof. . . . When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it

yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Gordon,* 84 Conn. App. 519, 534, 854 A.2d 74 (2004).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"It bears emphasis that [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Barretta,* 82 Conn. App. 684, 688, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004). With these principles in mind, we address each of the defendant's claims.

I

The defendant first claims that there was insufficient evidence to submit the conspiracy to commit robbery in the first degree count to the jury.[2] We disagree.

[2] In his brief to this court, the defendant claims that there was insufficient evidence to charge the jury on conspiracy to commit robbery in the first

"To establish the crime of conspiracy under [§ 53a-48], the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy . . . . The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act." (Internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 476, 853 A.2d 478 (2004).

It is the defendant's contention that the court improperly charged the jury on the conspiracy to commit robbery in the first degree count because there was insufficient evidence to establish that he entered into an agreement with Goethe to rob Anderson's house. In support of his claim, the defendant points solely to Goethe's testimony that he acted under duress. According to the defendant, because Goethe testified that he did not willingly agree to commit the robbery, the court should not have instructed the jury on conspiratorial liability because he did not enter into an agreement with Goethe. Although Goethe testified that he did not want to commit the robbery and did so under duress, it is for the trier of fact, not this court, to assess the credibility of the witnesses and to decide what testi-

degree and conspiracy to commit risk of injury to a child. While the court initially instructed the jury that it could find the defendant guilty of conspiracy to commit risk of injury to a child, the court later instructed the jury that conspiracy to commit risk of injury to a child was not before them. The court instructed the jury that the conspiratorial liability instruction was limited to the conspiracy to commit robbery in the first degree count. In the absence of evidence to the contrary, we presume that the jury followed those instructions. *State* v. *James G.*, 268 Conn. 382, 398, 844 A.2d 810 (2004). Accordingly, we will only address the defendant's claim as it applies to the conspiracy to commit robbery in the first degree count.

mony to credit. *State* v. *Miller*, 83 Conn. App. 789, 796–97, 851 A.2d 367, cert. denied, 271 Conn. 911, 859 A.2d 573 (2004). "We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Internal quotation marks omitted.) *State* v. *LaMothe*, 57 Conn. App. 736, 742, 751 A.2d 831 (2000). "The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Warholic*, 84 Conn. App. 767, 772–73, 854 A.2d 1145, cert. granted on other grounds, 271 Conn. 935, 861 A.2d 512 (2004). It was for the jury to decide whether to credit Goethe's testimony that he acted under duress when he agreed to commit the robbery.

Our review of the record discloses that there was sufficient evidence for the court to instruct the jury on conspiratorial liability on the robbery in the first degree count. Goethe testified that he sold crack cocaine for the defendant. Goethe would receive $500 worth of narcotics from the defendant to sell and Goethe and the defendant would divide the proceeds. Goethe testified that, prior to the robbery, he was unable to pay the defendant $250 from the drug sales. Goethe testified that he went to the defendant's house on October 23, 2001. While at the defendant's house, the defendant and Vargas brought up the idea of robbing Anderson's house. Goethe testified that a conversation then ensued between himself, the defendant and Vargas about robbing Anderson's house, the location of Anderson's safe and how the robbery was going to proceed. Vargas then drove the defendant and Goethe to Anderson's house where the robbery ensued. While inside Anderson's house, Goethe pointed a shotgun at Anderson and the child while the defendant ran into the bedroom and took Anderson's safe. Following the robbery, the defendant gave Goethe $200 from the robbery proceeds and told Goethe that he no longer owed him the $250 for the drug sales. Viewing the evidence in the light most favor-

able to sustaining the verdict, we conclude that there was sufficient evidence to charge the jury on conspiracy to commit robbery in the first degree.

## II

The defendant next claims that there was insufficient evidence that he possessed the requisite intent to commit the crime of risk of injury to a child. Specifically, the defendant claims that there was "no credible evidence presented at trial to show that [he] possessed any intent, either specific or general, necessary for violation of § 53-21." The crux of the defendant's claim is that in order to be found guilty of violating § 53-21, the state needed to establish that he intended to cause risk of injury to a child. We disagree.[3]

Section 53-21 provides in relevant part: "(a) Any person who (1) wilfully or unlawfully causes or permits

[3] In his brief to this court, the defendant also claims that there was insufficient evidence to support his conviction of risk of injury to a child because, according to the state's theory of the case, which was supported by the testimony of the victim, it was Goethe who was in possession of the shotgun throughout the robbery. According to the defendant, because he did not have any contact with the child during the robbery, he could not be held liable as an accessory to the crime of risk of injury to a child.

"This state . . . long ago adopted the rule that there is no practical significance in being labeled an accessory or a principal for the purpose of determining criminal responsibility. . . . Under the modern approach, a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . . [T]here is no such crime as being an accessory. . . . The accessory statute merely provides alternate means by which a substantive crime may be committed." (Internal quotation marks omitted.) *State* v. *Morales*, 84 Conn. App. 283, 290–91, 853 A.2d 532, cert. denied, 271 Conn. 928, 859 A.2d 584 (2004). "To be guilty as an accessory one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Internal quotation marks omitted.) Id., 292.

As we have noted, there was sufficient evidence presented that the defendant and Goethe intended to rob Anderson's house and that Goethe assisted the defendant in committing the robbery. Accordingly, the defendant could have been found guilty as an accessory of risk of injury to a child for the actions of Goethe during the robbery.

any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ." The defendant does not contest that the child was under the age of sixteen years or that the child was placed in a situation that was likely to impair her health or morals. Rather, the defendant's claim rests solely on the proposition that there was no credible evidence that he had the intent necessary to be convicted under § 53-21 because he was unaware that the child was in Anderson's house when he entered it.

This court rejected a similar claim in *State* v. *Davila*, 75 Conn. App. 432, 816 A.2d 673, cert. denied, 264 Conn. 909, 826 A.2d 180 (2003), cert. denied, 543 U.S. 897, 125 S. Ct. 92, 160 L. Ed. 2d 166 (2004). In *Davila*, the defendant was charged with violating § 53-21 after firing several gunshots into an apartment occupied by five children and one adult. Id., 435. The defendant claimed, inter alia, that there was insufficient evidence to support his convictions of risk of injury to a child because "he was unaware of the presence of more than one child in the apartment when the gunshots were fired." Id., 438. In rejecting the defendant's claim, we held that the jury reasonably could have found the defendant guilty of risk of injury to a child regardless of whether he was aware of the presence of the children in the apartment on the basis of his reckless disregard of the consequences of his actions. Id.

"It is not necessary, to support a conviction under § 53-21, that the defendant be aware that his conduct is likely to impact a child younger than the age of sixteen years. Specific intent is not a necessary requirement of the statute. Rather, *the intent to do some act coupled with a reckless disregard of the consequences . . . of that act is sufficient to find a violation of the statute.*"

(Citation omitted; emphasis added; internal quotation marks omitted.) Id. The state is not required to prove that the defendant intended to injure the child or impair her health. *State* v. *McClary*, 207 Conn. 233, 240, 541 A.2d 96 (1988). "All that [is] required [is] the general intent on the part of the defendant to perform the act which resulted in the injury . . . ." Id.

There was more than sufficient evidence before the jury that the defendant intended to commit the armed robbery and that his conduct demonstrated a reckless disregard of the consequences of his actions. The defendant conspired with Goethe to go to Anderson's house, armed with a shotgun, to rob Anderson of the safe in his bedroom. While Goethe held Anderson and the child at bay by pointing a shotgun at them, the defendant was able to run into Anderson's house to take the safe from the bedroom. Accordingly, viewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence to convict the defendant of risk of injury to a child.

III

The defendant's final claim is that there was insufficient evidence that he was present during the robbery. We disagree.

The defendant's claim is based on Anderson's inability to identify the defendant as the perpetrator of the robbery in a photographic array and the testimony of Paul Odigbo, an employee at Liberation House in Stamford, who testified that he saw the defendant in Stamford between 12 p.m. and 1 p.m. on October 23, 2001. Specifically, the defendant claims that "it is very clear that the testimony of . . . Anderson, together with the testimony of Paul Odigbo, casts more than reasonable doubt as to the defendant's presence at the scene of the crime." As we previously noted, however, it is in the exclusive province of the trier of fact, and not this

court, to determine the credibility of witnesses and which testimony it will accept or reject. *State* v. *Warholic*, supra, 84 Conn. App. 772–73.

The state presented ample evidence that the defendant was present at Anderson's house during the robbery. The jury heard from Anderson, who positively identified the defendant in court as the individual who entered his house, went into the bedroom and took the safe. The jury also heard from Goethe, who committed the robbery with the defendant. Goethe testified that he had known the defendant for approximately three months prior to the robbery and that it was the defendant who entered Anderson's house with him during the robbery and stole the safe. Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the state presented sufficient evidence to establish that the defendant was present during the robbery.

The judgment is affirmed.

In this opinion the other judges concurred.