## STATE OF CONNECTICUT *v.* JUSTIN DAVIS
### (AC 25082)

Bishop, DiPentima and Gruendel, Js.

Argued March 31—officially released July 19, 2005

*Robert M. Berke,* special public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Justin Davis, appeals from the judgment of conviction, rendered after a jury trial, of one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] The court sentenced the defendant to the custody of the commissioner of correction for a term of ten years, execution suspended after four years, with fifteen years probation. On appeal, the defendant claims that the state engaged in prosecutorial misconduct by making certain comments during its closing argument. We affirm the judgment of the trial court.[2]

The jury reasonably could have found the following facts. In November, 2001, L,[3] then thirteen years old, was playing basketball in her backyard in Bridgeport with her brother, B. The defendant, who lived on the same street as L, joined in the game. B went indoors to get drinks, leaving L and the defendant alone outdoors. While B was gone, the defendant, who was standing on or near the porch attached to the back of L's apartment building, directed her to "come here." After she complied, the defendant reached into her pants, inside her

---

[1] The defendant also was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). At the conclusion of the state's case, however, the court granted the defendant's motion for a judgment of acquittal on that charge.

[2] The defendant also claimed that the court violated his right to due process of law by failing to instruct the jury that the state was required to prove, as an element of the offense charged, the precise date on which it was alleged to have occurred. The defendant, however, abandoned that claim at oral argument before this court.

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

underwear, and placed his finger in her vagina for approximately two seconds. After doing so, the defendant told L that she "could take a lot for a little girl." The following day, L told her cousin what had happened and soon thereafter reported the incident to her mother, to a counselor and to a female police officer.

The defendant claims that the state engaged in prosecutorial misconduct by making certain comments during its closing argument. Specifically, he argues that the prosecutor denied him his right to a fair trial by improperly (1) bolstering the credibility of L's testimony, (2) appealing to the jury's emotions, (3) commenting on facts that were not in evidence and (4) stating the law as it applies to the motivation of witnesses to lie.

At the outset, we note that the defendant did not preserve his claim of prosecutorial misconduct at trial.[4] Nonetheless, we will review it, as we do preserved claims of misconduct.[5] See *State* v. *Stevenson*, 269 Conn. 563, 572–75, 849 A.2d 626 (2004) (analyzing unpreserved prosecutorial misconduct claim as if preserved for appellate review). "In so doing, we undertake a two-pronged inquiry. See id., 572. First, we determine whether the challenged conduct was improper. See id.

[4] The defendant requests that we review his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). It is no longer necessary to review unpreserved claims of prosecutorial misconduct pursuant to *Golding*. See *State* v. *Stevenson*, 269 Conn. 563, 572–75, 849 A.2d 626 (2004).

[5] This does not mean, however, that the absence of an objection at trial does not play a significant role in our analysis of the defendant's claim. To the contrary, "the determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. *When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 575, 849 A.2d 626 (2004).

If we answer that question in the affirmative, we then assess whether that misconduct, when viewed in light of the entire trial, deprived the defendant of his due process right to a fair trial. See id." *State* v. *Ritrovato*, 85 Conn. App. 575, 591, 858 A.2d 296, cert. granted on other grounds, 272 Conn. 905, 863 A.2d 699 (2004).

Before undertaking that inquiry, we note that "because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Jacobson*, 87 Conn. App. 440, 457, 866 A.2d 678, cert. granted on other grounds, 273 Conn. 928, 873 A.2d 999 (2005). With those principles in mind, we address the alleged instances of prosecutorial misconduct.

I

The defendant first claims that the prosecutor engaged in misconduct by improperly bolstering the credibility of L's testimony. He challenges the following statements made by the prosecutor during his closing argument: (1) "Now, again, I ask you to look at that information that [the defendant] gave you, and does that provide a reason as to why [L] would lie and why she would make [these allegations] up?" (2) "So, you have to resolve this case based upon reasons or motivations of individuals that are here and why they would perhaps try to deceive you, why [L] would lie to you

or why they want to get [the defendant] in trouble"; (3) "And you haven't heard anything in terms of what would motivate [L] to lie"; (4) "And you have to really look at it and say: What would motivate [L] to lie? What would motivate her to make this up? Do you think [L] was sophisticated enough to fool all of you six good people of the community, to fool this court, to fool her cousin, to fool her mom, to fool the police that she told?" (5) "What you have is a young girl that came before you and spoke of something that occurred to her. Perhaps you would have been more suspicious of her, perhaps, if she came in here and got into great detail about what happened. If she was trying to get at this defendant, don't you think she would have gotten a story to you that was lot tighter, perhaps a bit more violent, a bit more involved. And saying that's exactly what I did to him. That's exactly what he did to me. I'm coming into court. I'm going to cross the 't's and dot the 'i's and get into the information of what occurred. But she didn't. She came in here, and it was almost a struggle for her to come before you as well"; and (6) "I mean, you have everything that you need to decide this case. [L's] motivation was tested, not only by myself, but by [the defense attorney] and what would motivate her to make this up and lie to so many people along the way and, finally, you, the last group of individuals that have to decide this case. And you have to stop and ask this question and you have to answer it: Why would [L] lie? Why would [L] lie?" According to the defendant, the prosecutor, by making those comments, improperly bolstered L's credibility. We disagree.

Our Supreme Court has stated that "[i]t is not improper for a prosecutor to remark on the motives that a witness may have to lie, *or not to lie*, as the case may be." (Emphasis added; internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 585; see also *State* v. *Burton*, 258 Conn. 153, 170, 778 A.2d 955

(2001) (state may properly argue witness had no apparent motive to lie). The previously mentioned remarks by the prosecutor fall into that category. The prosecutor's comments underscored an inference that the jury, on the basis of the evidence presented, could have drawn entirely on its own, namely, that L had no motive to lie. See *State* v. *Stevenson,* supra, 585. The prosecutor asked the jury "to *look at* [*the*] *information* that [the defendant] gave [it] and [decide *whether*] *that provide*[*d*] *a reason* as to why [L] would lie . . . ." (Emphasis added.) The prosecutor suggested to the jury that it "[had not] heard *anything* in terms of what would motivate [L] to lie" and that it would have to ask itself, "[*W*]*hat* would motivate [L] to lie? *What* would motivate her to make this up?" (Emphasis added.) The prosecutor was not vouching for L's truthfulness; rather, he was urging the jury to find, on the basis of the evidence presented, that L was truthful. His comments drew on facts that were in evidence and did not constitute an expression of his opinion regarding L's credibility. See *State* v. *Singh,* 259 Conn. 693, 713, 793 A.2d 226 (2002) ("prosecutor may not express his own opinion, directly or indirectly, as to the credibility of [a witness]" [internal quotation marks omitted]). Accordingly, we conclude that the aforementioned comments by the prosecutor in this case were not improper.[6]

---

[6] In his reply brief, the defendant expanded on his argument that the comments were improper by comparing them to comments made by the prosecutor in *State* v. *Warholic,* 84 Conn. App. 767, 854 A.2d 1145, cert. granted, 271 Conn. 935, 861 A.2d 512 (2004), which this court deemed to be improper expressions of personal opinion. Arguing that the comments in this case are sufficiently similar to those deemed improper in *Warholic,* the defendant asserts that the comments made by the prosecutor in this case are necessarily improper.

The comments here are distinguishable from those in *Warholic.* In that case, instead of asking the jury to draw its own conclusions as to the complainant's credibility on the basis of the evidence presented, as the prosecutor did here, the prosecutor expressed his personal opinion as to the complainant's credibility by making several assertions. Id., 776–77. For example, the prosecutor asserted that (1) admitting performing oral sex on an adult "is so far out of the ballpark about what you can talk about to

## II

The defendant next claims that the prosecutor engaged in misconduct by improperly appealing to the jury's emotions. The defendant, in his brief to this court, challenges several statements made by the prosecutor during closing argument. He fails, however, to conduct any analysis of those statements. The only semblance of an analysis appears in the defendant's reply brief. There, the defendant (1) quotes certain comments made by the prosecutor in *State* v. *Warholic*, 84 Conn. App. 767, 854 A.2d 1145, cert. granted, 271 Conn. 935, 861 A.2d 512 (2004),[7] (2) notes that this court held those comments to be an improper appeal to the male jurors to identify with the complainant, (3) quotes a single statement by the prosecutor in this case[8] and (4) con-

your father" that *"there is only one explanation* for why a young boy, thirteen years old, would say something like this, and *the only reason he would say it is because it is true*"; (2) "[*i*]*t's a pretty far stretch* to think that [the complainant] is kind of a—a mastermind behind making this up"; (3) "[*t*]*here is no other rational or reasonable explanation* for what [the complainant] said other than it's the truth"; (4) "[t]he kid who *was molested* came in here and faced you all and said it"; (5) "[y]ou've sat here and listened to *a victim*"; and (6) "[y]ou heard from *the victim.*" (Emphasis added; internal quotation marks omitted.) Id., 775. None of those comments asked the jury to draw its own conclusions. The prosecutor improperly opined that "there *is* only one explanation," that "[t]here *is* no other rational or reasonable explanation," that the complainant *"was* molested" and that he was a *"victim.*" (Emphasis added; internal quotation marks omitted.) Id. Unlike the statements in this case, "[t]hose statements . . . were no more than veiled expressions of the prosecutor's view that [the complainant's] testimony was truthful . . . ." Id., 777.

[7] The defendant quotes from *State* v. *Warholic*, supra, 84 Conn. App. 767, the following comments by the prosecutor: "Think back, especially the men, think back to when you were a young man, what the worst thing someone could say about you at age twelve or thirteen. What do you think your friends and family would have thought if the facts in this case came out about one of us? Would you want your friends, would you want your father to know that about you . . . . Again, this is the last time I'll say it, and I hope it sinks in, but to say that to your father. How hard would that be? You would have to have one whopper of a motive to make that up." (Internal quotation marks omitted.) Id., 780.

[8] The defendant quotes the following statement from the prosecutor: "Now, perhaps you would not have put yourself in that situation that [L]

cludes his analysis by stating: "As stated [previously], such comments were improper in [*Warholic*] and do not fall within the ambit of appropriate argument." At no point in the defendant's analysis does he explain the similarities or differences between the comments that would justify his concluding remark. His analysis constitutes nothing more than a mere assertion and does not persuade us that the prosecutor's comment improperly appealed to the jury's emotions.[9] See *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) ("[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones"), cert. denied, 494 U.S. 1082, 110 S. Ct. 1814, 108 L. Ed. 2d 944 (1990); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003) ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" [internal quotation marks omitted]); *State* v. *Mims*, 61 Conn. App. 406, 410, 764 A.2d 222 (requiring, as prerequisite for appellate review, adequate briefing of issue), cert. denied, 255 Conn. 944, 769 A.2d 60 (2001). Accordingly, the defendant's claim fails.

### III

The defendant next claims that the prosecutor engaged in misconduct by improperly commenting on facts that were not in evidence. He challenges the following statement made by the prosecutor during closing argument: "[L] indicated to you [that the defendant] at

---

found herself in, but then again, she testified, she had no idea what was going to happen."

[9] Even if the defendant had conducted a more thorough analysis, we would be inclined to conclude that the comments are distinguishable. The prosecutor in this case, unlike the prosecutor in *Warholic*; see footnote 7; did not ask the jurors to identify with the complainant as a victim of sexual abuse. The prosecutor simply said to the jury: "Now, perhaps you would not have put yourself in that situation that [L] found herself in . . . ." That is unlike asking jurors to put themselves in L's shoes as a victim of a crime.

that point in time grabbed her, pulled her over to him, put his hands inside of her shorts, insider of her underwear, and put his finger inside her vagina." In his reply brief, the defendant, citing *State* v. *Warholic*, supra, 84 Conn. App. 778–79, notes that a prosecutor must confine his arguments to the evidence in the record and argues that there was no evidence before the court to suggest that the defendant "grabbed" or "pulled" L and, therefore, that those portions of the prosecutor's statement referring thereto were improper. We agree with the defendant. Viewing those improper comments in light of the entire trial, however, we conclude that they did not deprive the defendant of his due process right to a fair trial. See *State* v. *Stevenson*, supra, 269 Conn. 598.

"A prosecutor may invite the jury to draw reasonable inferences from the evidence, however, he or she may not invite sheer speculation unconnected to evidence. . . . The rationale for the rule prohibiting the state from making such a reference is to avoid giving the jury the impression that the state has private information, not introduced into evidence, bearing on the case. . . . [T]he privilege of counsel in addressing the jury . . . must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury [has] no right to consider." (Citation omitted; internal quotation marks omitted.) Id., 587.

As stated previously, the prosecutor's comments were improper. There was no evidence before the jury to suggest that the defendant "grabbed" or "pulled" L. In the context of the entire trial, however, the comments were harmless and did not deprive the defendant of his due process right to a fair trial. Later in his argument, the prosecutor suggested that the jury could believe otherwise by stating: "[Y]ou may think . . . [the defendant] didn't drag her to the porch . . . ." Furthermore, the judge instructed the jury that its recollection of the evidence, not the attorneys' recollections, was control-

ling. The court stated: "Now, there are certain things that are not evidence, and you may not consider them in deciding what the facts are. I will review with you those things which may have come to your attention during the trial but do not constitute evidence. These would include, first of all, the arguments and statements made by the attorneys. The lawyers are not witnesses. What they have said to you in their closing arguments is intended to help you interpret the evidence, but it is not in and of itself evidence. If the facts as you remember them differ from the way the lawyers stated them, your memory of them controls." To the extent that the prosecutor's references to grabbing and pulling were improper, they were cured by the court's instruction. Accordingly, the defendant's claim fails.

IV

The defendant's final prosecutorial misconduct claim is that the prosecutor improperly stated in closing argument the law as it applies to the motivation of witnesses to lie. In the section of his brief dedicated to this claim, the defendant states: "In its initial closing argument, the state's attorney improperly placed emphasis on the defendant's interest in the outcome of the case." He then recites from court transcripts the following statements by the prosecutor: "The court is going to give you a certain instruction concerning the testimony of the defendant that you are not going to hear that's applied to any other witnesses [who] are presented here. The judge is going to tell you that the defendant testified in this case, and you have to consider what interest he had in the outcome of this case. You are not going to hear that concerning [L]. You are not going to hear that concerning her cousin . . . . You are not going to hear that concerning her mom. You are not going to hear that concerning the police. I mean, all of you in judging the credibility of people have to look at why they are coming in here saying certain things. But

the court will instruct you with respect to the defendant in this case, what interest does he have in this case?" That is the extent of the defendant's analysis for his claim.

As indicated previously and "[a]s we have stated on occasions too numerous to recite, mere abstract assertions, unaccompanied by reasoned analysis, will not suffice to apprise a court adequately of the precise nature of a claim." *LaBow* v. *LaBow*, 85 Conn. App. 746, 751–52, 858 A.2d 882 (2004), cert. denied, 273 Conn. 906, 868 A.2d 747 (2005). The section of the defendant's brief dedicated to this claim contains nothing but a mere assertion that is unaccompanied by reasoned analysis. Accordingly, the defendant's claim fails.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] In his reply brief, the defendant (1) recites a comment made by the prosecutor in *State* v. *Warholic*, supra, 84 Conn. App. 776 ("the defendant has got a lot to lose in this case as compared with [the complainant], who ha[s] nothing to gain by coming in here and telling the truth" [internal quotation marks omitted]), (2) notes that this court found that comment to be improper, (3) recites the aforementioned comments from this case and (4) concludes by stating: "These improper statements unfairly bolster the credibility of the state's witnesses and wrongfully proffers the position that the court and prosecutor believe that the defendant was lying." At no point does he explain the similarities or differences between the comments from the two cases that would justify his concluding statement. As in his initial brief, his analysis in his reply brief constitutes nothing more than a mere abstract assertion.