## KEVIN O'BRIEN *v.* FLORENCE DAVIS

Superior Court, Judicial District of Stamford-Norwalk

File No. FA-04-4000138S

Memorandum filed September 29, 2005

*Rutkin & Oldham, PC*, for the plaintiff.

*Fitzmaurice & Siegel*, for the defendant.

TIERNEY, J. What happens when a court misspeaks in an oral decision rendered from the bench immediately after the conclusion of the hearing? No Connecticut decision gives the answer to this seemingly common occurrence. Other more well known authorities have, however, addressed this issue.

"I meant what I said and I said what I meant." T. Geisel, Horton Hatches the Egg (Random House 1940) p. 16.

" 'When *I* use a word,' " Humpty Dumpty said, in rather a scornful tone, " 'it means just what I choose it to mean—neither more nor less.' " (Emphasis in original.) L. Carroll, Through the Looking-Glass (Random House ed. 1946) p. 94. The foregoing passage was based on a discussion between Alice and Humpty Dumpty on the meaning of the well known nursery rhyme placing Humpty Dumpty on a wall, fall and all. *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 688 n.5, 694 A.2d 1218 (1997).

I

FACTS

The parties in the present case were long-standing residents of the state of New York. They were married on May 28, 1978, and have two children who continue to reside in New York. Florence Davis, the defendant wife, continues to reside in New York. The parties have

been involved for some time in family negotiations, each represented by New York counsel.

On June 27, 2004, Kevin O'Brien, the plaintiff, filed a writ of summons and complaint in the Superior Court for the judicial district of Stamford-Norwalk at Stamford seeking "a dissolution of marriage, equitable distribution of the parties' property, joint custody of the parties' minor child and such other and further relief as to this Court may seem just, equitable and proper." The action was returnable on July 20, 2004. The clerk of the court assigned a case management date of October 25, 2004. The summons stated that the plaintiff's address was in Stamford and that the defendant's address was the parties' marital home in Brooklyn, New York. The plaintiff alleged jurisdiction in the alternative in paragraph two: "Plaintiff, for at least twelve months next preceding the date of the filing of this complaint or the entry of judgment, has been a resident of this state." General Statutes § 46b-44 (c) (1).

The plaintiff then obtained an order of notice on June 29, 2004 requiring service on the defendant in Brooklyn by certified mail. No marshal's return of service for this order of notice is in the file pertaining to the present case. The plaintiff obtained a subsequent order of notice on September 13, 2004, requiring that service be made on the defendant by a proper New York officer in the state of New York. An affidavit of service of summons and complaint dated September 20, 2004, is in the case file indicating that the defendant was served in hand at the marital home in Brooklyn on September 18, 2004. The defendant was never served in Connecticut. The defendant appeared neither pro se nor by counsel in the present action until November 9, 2004. The defendant appeared by counsel of record on November 9, 2004, and filed a motion to open the judgment (postjudgment) dated November 9, 2004. The motion stated: "The defen-

dant-wife respectfully requests that the judgment of dissolution entered by the Court (*Harrigan, J.*) in her absence and by default on October 21, 2004 be opened and set aside due to the following . . . ." The court, *Harrigan, J.*, had granted the plaintiff's relief in the case-in-chief and entered only one order on October 21, 2004, a decree dissolving the marriage on the ground of irretrievable breakdown.

Among the several grounds that the defendant alleged in her motion to open were lack of subject matter jurisdiction by the Superior Court for the judicial district of Stamford-Norwalk at Stamford because the plaintiff did not establish his residency in Connecticut until the summer of 2004. She also alleged that his Connecticut counsel knew that both parties were represented in New York by counsel and failed to notify her New York attorney of the October 21, 2004 uncontested dissolution hearing. She further alleged that both parties' New York counsel attended settlement meetings on October 14 and 15, 2004, and that neither she nor her New York counsel was notified of the scheduled October 21, 2004 uncontested hearing. She further alleged that the judgment was entered before the October 25, 2004 case management date and that notice was neither given to her by the Superior Court clerk of the October 21, 2004 hearing, nor was notice given to her by the plaintiff or his counsel of the October 21, 2004 hearing. She alleged yet further that no case management agreement was filed and that the plaintiff failed to file a case management agreement form to schedule an uncontested hearing. Finally, the defendant alleged that the case management conditions had not been complied with by October 21, 2004, as established by Practice Book § 25-50, and that the plaintiff's testimony at the October 21, 2004 hearing regarding residency was a misrepresentation.

On February 7, 2005, the court, *Tierney, J.*, conducted an evidentiary hearing on the defendant's motion to open dated November 9, 2004. Both parties testified, as well as their respective New York counsel, who had been actively representing both parties from July, 2003, through February, 2005. Both the plaintiff and the defendant are lawyers by profession. Both Connecticut counsel then furnished this court with legal arguments immediately after the presentation of evidence. This court then rendered an oral decision from the bench at the conclusion of counsels' arguments. The court decision is contained in the transcript of the present case. This court signed the transcript on May 20, 2005, and the signed transcript of the February 7, 2005 hearing and order is in the case file.

In the oral decision, this court noted that both parties had failed to comply with the parenting education program either as of October 21, 2004, or February 7, 2005. The parenting education program is mandated first by General Statutes § 46b-69b, second, by the automatic orders under Practice Book § 25-5 (6); ("[t]he parties, if they share a minor child or children, shall participate in the parenting education program within sixty days of the return date or within sixty days of the filing of the application"); and, third, by this court's parenting education order in the file dated July 13, 2004. Thereafter, the court granted the motion to open dated November 9, 2004. The court stated: "Motion to open granted if you fail to comply with the parenting education program." This inartful use of the word "if" instead of "since" is the cause of the present controversy and the discussion of the issue at hand: what happens when a court misspeaks in an oral decision rendered from the bench immediately after the conclusion of the hearing?

At the conclusion of the February 7, 2005 proceedings after the motion to open was granted, the court stated: "The matter is assigned to the regular docket. We need

a status conference. Please confer as to the date for the status conference so we can code in for a status conference." A status conference was then assigned for March, 2005. There was no clerk in the courtroom on February 7, 2005, at the time the court rendered its oral decision. At some time after the February 7, 2005 hearing, Norman Roberts, the assistant clerk, made the following notation on the order page of the November 9, 2004 motion to open: "2-7-05 Granted in accordance with rulings on the record. Counsel advised to order a transcript of court's orders. Tierney, J. Signed, N. Roberts Ass't Clerk." Roberts was not present in court at the time of the rendering of the oral decision. The computer programs, Cater and Edison, marked the motion to open: "Order Granted 2/7/05 Tierney J." Therefore, the clerk placed the file in an open status by a pleading entitled: "Replace Record to Trial List Status (Keypoint) and Erase All Higher Keypoint Dates."

The status conference was continued by counsel from March 18 to March 22, 2005. At the March 22, 2005 status conference, the plaintiff was represented by new counsel. The plaintiff's new counsel claimed that Judge Tierney's order of February 7, 2005, was conditional on the plaintiff's completing the parenting education program. The plaintiff cited the language already refer- enced in this memorandum of decision, noting particu- larly the court's use of the word "if." On March 18, 2005, the plaintiff filed first with the clerk in open court a certification of the plaintiff's completion of the parent- ing education program and later filed a second pleading. The first pleading is the parenting education program completion form (JD-FM-149 Rev. 1-98) and states that Catholic Family Services certified the plaintiff's comple- tion of the parenting education program on March 16, 2005. The second pleading is a duplicate copy of the first pleading. It is also signed as completed by Catholic

Family Services on March 16, 2005, and contains as well the additional signature of the supervisor of Stamford family services on April 15, 2005. This court finds that the plaintiff completed the Connecticut parenting education program in accordance with § 46b-69, Practice Book § 25-5 (6) and this court's order dated July 13, 2004. The date of the plaintiff's completion is March 16, 2005.

The plaintiff now claims that this court's conditional order dated February 7, 2005, has been complied with and that, therefore, the order dated February 7, 2005, opening the judgment has been automatically vacated. He further claims that the present case is now in judgment, with the effective judgment being that of Judge Harrigan on October 21, 2004, granting only the dissolution of the marriage. The plaintiff filed neither a motion for judgment nor a motion to vacate this court's order dated February 7, 2005, nor any motion addressed to the plaintiff's compliance with this court's alleged conditional order on February 7, 2005. The clerk still has this file listed as being active and as not having been placed in judgment. The clerk's orders on the motion to open and on the motion to "Replace Record to Trial List Status (Keypoint) and Erase All Higher Keypoint Dates" have not been changed. The plaintiff has neither requested that the clerk nor the court do so.

The defendant has filed two motions: the present motion for reargument and clarification dated May 25, 2005, and a motion to dismiss, pendente lite, dated April 6, 2005, alleging lack of subject matter jurisdiction due to the Connecticut residency issue. The motion to dismiss has not been heard pending the decision on the present motion.

No motion for articulation has been filed. No appeal has been filed. There is no provision in the rules of practice for a motion for articulation to be filed in a

case that has not been appealed. Practice Book §§ 60-5, 63-1, 66-5 and 66-7; *Brycki* v. *Brycki*, 91 Conn. App. 579, 594, 881 A.2d 1056 (2005).

The motion for reargument was filed on May 25, 2005. It references the February 7, 2005 decision, which was rendered from the bench in the presence of all parties. The defendant did not designate the motion to reargue as a Practice Book § 11-11 motion. The motion for reargument must be denied because it was not filed "within twenty days from the issuance of notice of the rendition of the decision or order . . . ." Practice Book § 11-12 (a).

"Motions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper." *Holcombe* v. *Holcombe*, 22 Conn. App. 363, 366, 576 A.2d 1317 (1990). "There is no time restriction imposed on the filing of a motion for clarification. See *Barnard* v. *Barnard*, [214 Conn. 99, 100, 570 A.2d 690 (1990)] (motion for clarification filed sixteen months after judgment); *Cattaneo* v. *Cattaneo*, [19 Conn. App. 161, 162–63, 561 A.2d 967 (1989)] (motion for clarification filed six and one-half years after judgment)." *Holcombe* v. *Holcombe*, supra, 366. The motion for clarification cannot be used to create a new order or change the legal effect of the existing order. *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002); *Robinson* v. *Robinson*, 86 Conn. App. 719, 723, 862 A.2d 326 (2004); *Walshon* v. *Walshon*, 42 Conn. App. 651, 656, 681 A.2d 376 (1996); *Roberts* v. *Roberts*, 32 Conn. App. 465, 473, 629 A.2d 1160 (1993); *Koper* v. *Koper*, 17 Conn. App. 480, 484, 553 A.2d 1162 (1989). This court finds that the portion of the defendant's motion requesting clarification dated May 25, 2005, is properly before it.

The defendant claims three forms of relief in her motion for clarification: (1) a determination that the

entire matter has been returned to the docket for all purposes; (2) a determination that the court did not delegate the ruling on the motion to open to the plaintiff for the plaintiff to decide to attend or not to attend parenting education; and, (3) a determination that the February 7, 2005 order on the motion to open was not conditional.

## II

### ORDER

The motion for clarification is granted, and the court restates its February 7, 2005 order using the words that it intended with the meaning that it intended on that date: "Motion to open granted since you failed to comply with the parenting education program."

## III

### BASIS OF ORDER

There are eleven bases for the issuance of this court's order. The first is that Connecticut appellate courts have permitted casual use of language in oral statements made in court. "[C]losing arguments often have a rough and tumble quality about them . . . . " (Internal quotation marks omitted.) *State* v. *Davis*, 90 Conn. App. 263, 266, 876 A.2d 1265 (2005); *State* v. *Jacobson*, 87 Conn. App. 440, 457, 866 A.2d 678, cert. granted on other grounds, 273 Conn. 928, 873 A.2d 999 (2005). "Closing arguments of counsel, however, are seldom carefully constituted *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear." (Emphasis in original; internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 16, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004); see also *State* v. *Nixon*, 91 Conn. App. 333, 339, 880 A.2d 199, cert. denied, 276 Conn. 911, 886 A.2d 911 (2005); *State* v. *Little*, 88 Conn. App. 708, 719, 870 A.2d 1170, 274 Conn. 916, 879 A.2d 895 (2005). "We have recognized that when a court gives a lengthy jury instruction, a slip of the tongue may occasionally

occur." *State* v. *Jarrett*, 82 Conn. App. 489, 497, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). "Clearly, the jury was given proper guidance, despite the court's slight slip of the tongue." *State* v. *Serrano*, 91 Conn. App. 227, 245, 880 A.2d 183 (incorrect addition of the word "attempted" in burglary jury instruction held not erroneous), cert. denied, 276 Conn. 908, 884 A.2d 1029 (2005).

Second, there is no authority for a court to enter a conditional order in a family case to open a judgment. Either the case is in judgment, in judgment on appeal or open on the regular docket awaiting judgment. No statute or rule of practice permits conditional status as to a judgment, and the plaintiff's counsel has not provided any such authority. See Practice Book § 17-27; General Statutes §§ 52-212 and 52-212a. The only provision in our procedure for automatically opening a judgment upon the filing of a document is by the filing of an answer after a default has entered. Practice Book § 17-32 (b).

Third, the order of February 7, 2005, is not self-executing. Self-executing orders in family cases are rare. *Eldridge* v. *Eldridge*, 244 Conn. 523, 532, 710 A.2d 757 (1998); *Simms* v. *Simms*, 89 Conn. App. 158, 162, 872 A.2d 920 (2005); *Behrns* v. *Behrns*, 80 Conn. App. 286, 290, 835 A.2d 68 (2003) ("[I]f the terms of an agreement are ambiguous, its provisions are not self-executing . . . . '[T]he public policy in favor of encouraging parties to seek judicial resolution of ambiguous judgments rather than resort to self-help was particularly compelling in family cases.' "), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004); *Albrecht* v. *Albrecht*, 19 Conn. App. 146, 151, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989).

Fourth, on February 7, 2005, the court found every issue argued by the defendant in her favor and in favor of opening the judgment. Having made these adverse factual findings, the plaintiff has failed to offer any

reason why the court would refuse to open the judgment inconsistent with the factual findings contained in the February 7, 2005 transcript. *Boccanfuso* v. *Green*, 91 Conn. App. 296, 312, 880 A.2d 889 (2005) (court's decision cannot be illogical or inconsistent with court's findings).

Fifth, the uncontested assignment procedure with a nonappearing defendant after the adoption of the case management program by the Superior Court judges is as follows: (1) the defendant is served with the writ of summons and complaint; (2) the plaintiff files a case management agreement on the date established by the court, shortly after the expiration of the ninety day time period and the plaintiff requests an uncontested hearing date on the filed case management agreement form; (3) the clerk then completes the case management agreement form and assigns the uncontested hearing date while making a note of that date on the case management agreement form; (4) the clerk notifies the plaintiff of the uncontested hearing date by filing a computer generated judicial notice; (5) the plaintiff then furnishes notice to the nonappearing defendant of the uncontested date pursuant to the case management agreement form; (6) the uncontested hearing takes place on the assigned date because the plaintiff has satisfied the two notice elements of the case management program; service and notice to the defendant of the uncontested hearing date; (7) if the plaintiff files an appearance before the uncontested hearing date, the case management procedure continues; and (8) since 1998, a default of the defendant for failure to file an appearance is no longer part of the uncontested procedure. Practice Book § 25-51.

The sixth basis for the issuance of this court's order is the following set of factual findings that the court makes and that are consistent with its decision to open the judgment: (1) the evidence at the October 21, 2004

hearing was insufficient for the court to make a finding of residency; and (2) the issue of residency must be tested by a hearing on the merits; the policy of the Superior Court is to grant a hearing on the merits of the issue if at all possible. "It is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978); *East Haven* v. *Paranto*, 2 Conn. App. 449, 453–54, 479 A.2d 1225 (1984); (3) the plaintiff failed to file a case management agreement in accordance with automatic order number four, thus, under Practice Book § 25-50, the plaintiff had no right to an uncontested hearing assigned by the clerk. Practice Book § 25-51 (a). "If the matter is uncontested, and a form prescribed by the office of the chief court administrator has been filed, the clerk shall assign the matter to a date certain for disposition." Practice Book § 25-50 (b); (4) there is no case management agreement in the file as of October 21, 2004. A certain exhibit of the plaintiff's does not contain a court stamp. This certain exhibit is not coded in as a pleading in either the Cater or Edison judicial branch computer systems; (5) the plaintiff failed to give notice to the defendant of the uncontested hearing date of October 27, 2004, in violation of the procedures set forth in the case management agreement form, which states: "If the Defendant has not filed an Appearance, you must give the Defendant reasonable notice of the date of the hearing"; (6) the uncontested hearing was held four days prior to the case management date. Although this procedure is in compliance with the ninety day statutory stay, it is in violation of the case management procedures; (7) the clerk did not issue a computer generated judicial notice for the uncontested hearing date of October 21, 2004. Such a judicial notice is issued routinely by the clerk once an uncontested dissolution hearing has been requested; (8) there was no evidence offered on how the plaintiff obtained the

October 21, 2004 uncontested hearing. With no case management agreement form in the file, that prescribed method of assigning a case for a hearing could not have been used; (9) the case management date was October 25, 2004 and automatic order number four states: "The parties shall comply with [Practice Book §] 25-50 to determine if their actual presence at the court is required on that date." Since the plaintiff obtained his uncontested hearing on October 21, 2004, the plaintiff did not give the defendant the opportunity to comply with automatic order number four; (10) the plaintiff did not attach a proper copy of the automatic orders to the papers he served on the defendant and failed to give the defendant proper notice of the provision regarding case management procedures; (11) the notice of the automatic orders attached by the plaintiff to the complaint did not recite exactly the automatic orders required by Practice Book § 25-5; (12) neither party completed the parenting education program within sixty days of the return date. Practice Book § 25-5 (6). The thirteenth and final factual finding by this court is that since 1998, family cases have not been covered by the default pleading rules. Practice Book § 25-51.

The seventh basis for the issuance of this court's order is that the February 7, 2005 oral decision did not set forth any conditions such as the time limit for complying with the parenting education program after February 7, 2005; whether the completion by one party would be sufficient to comply with the conditional order; how the trial judge would receive notice of the filing of the certificate of completion; was the conditional order self-executing; what due process rights would be granted to the other party to contest the compliance with the condition; and how was the clerk of the court to know that the mere filing of a piece of paper would automatically place the case in judgment status.

Eighth, the trial court always has an interest in preserving the integrity of its judgment. "[I]t is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Rocque* v. *Light Sources, Inc.*, 275 Conn. 420, 433, 881 A.2d 230 (2005); *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 670, 594 A.2d 958 (1991).

Ninth, by making the factual findings previously set forth in this memorandum of decision under the sixth basis for the issuance of this court's decision, the trial court essentially agreed with all of the defendant's arguments.

Tenth, this court misspoke in its decision on February 7, 2005. The essence of its February 7, 2005 order was to open the judgment unconditionally because the parenting education program had not been completed.

Eleventh, this court has long ruled that the parenting education program contains no sanctions for failure to comply, neither in Practice Book § 25-5 (6) nor General Statutes § 46b-69b. The court has gone on record in past cases in which both counsel in the present case were no doubt present in open court, declaring that there must be some sanction for failure to complete the parenting education program. The parenting education program has greatly reduced anxiety, turmoil and conflict in family cases and, thus, it is beneficial for all litigants with minor children. A trial court should rule on sanctions so that on appeal, the issue of sanctions can be considered. On February 7, 2005, this court alluded to those facts and hoped that its decision made that day granting the motion to open unconditionally as a sanction for not completing the parenting education program would be that opportunity for appellate review of the sanctions issue. This court believes that sanctions

for failure to complete the mandated parenting education program are contained within the inherent power of the Superior Court to enforce its orders. *Darak* v. *Darak*, 210 Conn. 462, 478, 556 A.2d 145 (1989); *Low* v. *Pressed Metal Co.*, 91 Conn. 91, 97, 99 A. 1 (1916); *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 208, 572 A.2d 1032 (1990).

## IV

## REPEATED ORDER

In the event there is a dispute or misunderstanding as to the court's intended meaning in granting the motion to open on February 7, 2005, or in its stating the order in this memorandum of decision, one should be guided by Chief Justice McDonald's dissent in *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 508, 746 A.2d 1277 (2000): "Accordingly, I say I dissent and I mean to dissent."

## V

## ORDER

The motion for clarification is granted, and the court restates its February 7, 2005 order using the words that it intended with the meaning that it intended on that date: "Motion to open granted since you failed to comply with the parenting education program."

## VI

## CODA

Any further requests for reargument, clarification or articulation as to the meaning of either the February 7, 2005 oral decision or the present written memorandum of decision dated September 29, 2005, will be met with the painfully clear conclusion to the further dialogue engaged in by Alice and Humpty Dumpty:

" 'Twas brillig, and the slithy toves

Did gyre and gimble in the wabe.

All mimsy were the borogoves,

And the mome raths outgrabe.' "

L. Carroll, supra, p. 95.