## STATE OF CONNECTICUT *v.* ANTHONY HARRIS
### (11325)

DALY, O'CONNELL and HEIMAN, Js.

Argued September 14—decision released October 5, 1993

*Donald D. Dakers,* with whom, on the brief, was *Christine Perra,* special public defenders, for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, and *Michael D. Glowa,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of accessory to the sale of narcotics in violation of General Statutes §§ 21a-278 (b)[1] and 53a-8,[2] and one count of employing a person under eighteen years of age in the sale of narcotics in violation of General Statutes § 21a-278a (c).[3] The defendant claims that the trial court improperly (1) denied his motion for a new trial based on his claim of jury misconduct and (2) failed to protect his state and federal constitutional rights to due process by failing to instruct the jury properly as to the elements of the crime of employing a person under eighteen years of age in the sale of narcotics. The defendant claims that the trial court improperly instructed the jury by charging that the elements of that crime were the same as those of the crime of being an accessory to the sale of narcotics except for the addi-

---

[1] General Statutes § 21a-278 (b) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person . . . shall be imprisoned . . . ."

[2] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] General Statutes § 21a-278a (c) provides: "Any person who employs, hires, uses, persuades, induces, entices or coerces a person under eighteen years of age to violate section 21a-277 or 21a-278 shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278."

tional element that the person employed must be under eighteen years of age.

The jury could reasonably have found the following facts. On May 15, 1990, the Bristol police department conducted an undercover police operation on Davis Drive. The operation was aimed at arresting drug dealers in the Cambridge Park area of Bristol. The police employed a "cop in a box operation."[4] On the evening of May 15, 1990, the police used two informants, one as a passenger and the other to drive a pickup truck into the Cambridge Park area with an officer concealed inside a box in the bed of the truck. The defendant, Anthony Harris, flagged down the vehicle. He approached the vehicle and asked the driver what she wanted.

The driver stated that she wanted "rock" or "powder."[5] The defendant walked away from the vehicle. He returned with his uncle, John Gains. Gains, at the time of this incident, was sixteen years of age and the defendant was twenty. The defendant then instructed Gains to "serve her." The defendant walked away and Gains produced a Newport cigarette pack from which he removed a small blue bag containing white powder. He handed it to the driver, who handed it to the passenger. The passenger then yelled "two." Gains produced another bag of white powder and the informants gave Gains $40. The powder later tested positive for cocaine. The police arrested both the defendant and Gains on June 22, 1990.

---

[4] Detective Kevin Hayes of the Bristol police department testified that the "cop in a box operation" consisted of placing an officer in a washing machine box in the back of a pickup truck that had a cap on the back. Two informants would enter the area in the truck to purchase narcotics. The box had holes the approximate size of quarters on all sides. The officer would then observe the drug transaction and identify the suspect for subsequent arrest.

[5] Detective Kevin Hayes testified that "rock" is a street name for crack cocaine and "powder" is a street name for cocaine.

I

The defendant first asserts that the trial court improperly denied his motion for a new trial based on alleged juror misconduct. The defendant claims that the trial court incorrectly placed the burden on him of proving that extrinsic evidence *actually* prejudiced the defendant. Further, the defendant claims that the decision by the trial court was clearly erroneous. We are unpersuaded.

The consideration of certain additional facts is necessary for a proper resolution of this issue. The record discloses that on October 18, 1991, the jury found the defendant guilty. On January 3, 1992, the defendant filed a motion for a new trial. The motion claimed that after the verdict alternate juror Eva Michaud approached defense counsel and revealed that she had conducted an "experiment" at home to assess the degree to which a person could see through a quarter size hole in a cardboard box. The motion also claimed that the juror discussed this experiment with other jurors.

The trial court held a full evidentiary hearing on February 6, 1992. At the hearing, defense counsel called several jurors to testify. Michaud testified that she did perform a "cop in a box" type experiment during the trial. She further testified that she did not talk with the other jurors about the experiment. Juror Merrimon Hunt testified that a male juror did tell the jury, in the jury room, that he performed a "cop in a box" experiment. Next, juror Nancy Tinker testified that a juror named Sal told the jury that he had performed an experiment outside the jury room regarding the cop in a box theory. Tinker did state, however, that the information did not affect her decision in the case.[6]

---

[6] Tinker also stated that the jurors, during deliberations, performed experiments by cutting holes in paper the size of a quarter

Juror Salvadore Larosa then testified that he never performed a cop in a box experiment nor did he discuss any experiments with any of the jurors. Juror Joseph Primich also testified that no juror had discussed a cop in a box experiment performed outside the jury room. Juror Robert Tatters testified that no discussions transpired about a cop in a box experiment. After a full hearing, the trial court found that the defense had presented no credible evidence that any demonstration was performed by any of the regular jurors that had "interfered with, or participated in, or aided, or assisted the jury in coming to [its] decision on the merits of the case." Further, the trial court stated: "The court makes a factual determination that there is no evidence, based on the witnesses that the court heard, that the jury at any time took into consideration any concept of a demonstration of the claimed position by the defendant, that one of the jurors set up a box and sat inside of it and looked out to see what he could see."

The trial court correctly placed the burden on the defendant to prove actual prejudice. "[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial indifferent jurors. *Irvin* v. *Dowd,* 366 U.S. 717, 722, 81 S. Ct. 1369, 6 L. Ed. 2d 751 (1961)." (Internal quotation marks omitted.) *State* v. *Migliaro,* 28 Conn. App. 388, 395, 611 A.2d 422 (1992); *State* v. *Davis,* 32 Conn. App. 21, 28, 628 A.2d 11 (1993); *State* v. *Leonard,* 31 Conn. App. 178, 194, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993). "A necessary component of the right to an impartial jury is the right to have the jury decide the case 'solely on the basis of the evidence and arguments given them in the adversary arena after proper instruction on the law by the court.' " *State* v. *Migliaro,* supra, quoting *State* v. *Rodriguez,* 210 Conn. 315, 325,

and looking through them. She claimed that these experiments did contribute to her decision.

554 A.2d 1080 (1992). Consideration by the jury of extrinsic evidence can violate the constitutional right to a trial by an impartial jury. *State* v. *McCall,* 187 Conn. 73, 80, 444 A.2d 896 (1982); *State* v. *Migliaro,* supra.

The trial court must conduct a hearing to determine whether jury misconduct occurred. *State* v. *Davis,* supra, 28–29; *State* v. *Migliaro,* supra. The hearing allows the trial court to assess the credibility of witnesses and the weight to be accorded their testimony. *State* v. *Leonard,* supra, 195. Once the trial court finds that consideration of extrinsic evidence occurred, the court must then determine whether the misconduct actually prejudiced the defendant.[7] *Asherman* v. *State,* 202 Conn. 429, 442, 521 A.2d 578 (1987); *State* v. *Leonard,* supra; *State* v. *Migliaro,* supra, 396.

The trial court followed the proper procedure for determining the motion for a new trial based on juror misconduct. It first held a hearing to determine whether juror misconduct occurred. The trial court then found that juror misconduct did not actually prejudice the defendant.

The determination that the misconduct did not actually prejudice the defendant is not clearly erroneous. "[T]he trial court enjoys broad discretion in determining whether jury misconduct occurred, and, if so, whether such misconduct prejudiced the defendant . . . ." *State* v. *Migliaro,* supra, 395; *State* v. *McCall,* supra, 77. "The trial judge is in the best position and

---

[7] "We have previously held that, in cases where the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error. *State* v. *Castonguay,* 194 Conn. 416, 435, 481 A.2d 56 (1984); *Aillon* v. *State,* [168 Conn. 541, 548, 363 A.2d 49 (1975)]. Those cases are clearly distinguishable from cases like the present, in which the trial court was in no way responsible for the juror misconduct." *Asherman* v. *State,* 202 Conn. 429, 442, 521 A.2d 578 (1987).

is uniquely qualified to appraise the probable effect of information on the jury, the materiality of the extraneous material, and its prejudicial nature." (Internal quotation marks omitted.) *State* v. *Leonard,* supra. This court will reverse the trial court only if it determines that the factual findings were clearly erroneous. Id. " 'A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .' " (Citations omitted.) *Dalia* v. *Lawrence,* 226 Conn. 51, 71, 627 A.2d 392 (1993); *Central Connecticut Teachers Federal Credit Union* v. *Grant,* 27 Conn. App. 435, 437–38, 606 A.2d 729 (1992). On the basis of the record, we are unable to conclude that the trial court's finding of no actual prejudice is clearly erroneous.

## II

The defendant next claims that the trial court improperly instructed the jury that the elements of the crime of using or employing a person under the age of eighteen to sell cocaine in violation of § 21a-278a (c) were identical to the elements of being an accessory to the sale of cocaine in violation of §§ 53a-8 and 21a-278 (b) except for the additional element that the person used or employed must have been under the age of eighteen. The defendant admits that this claim was not properly preserved in the trial court, but contends that it is nonetheless reviewable under the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We agree.

" 'Our standard of review in cases when the defendant claims that the instructions violate constitutional due process protections is whether the jury instructions were so deficient that it was reasonably possible that

the jury was misled.' " *State* v. *Allen,* 28 Conn. App. 81, 84, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992); *State* v. *Campbell,* 225 Conn. 650, 661, 626 A.2d 287 (1993); *State* v. *Wolff,* 29 Conn. App. 524, 530, 616 A.2d 1143 (1992). A conviction will be reversed only if, considering the charge as a whole, this court determines that there is a "reasonable possibility that the jury was misled in reaching its verdict." *State* v. *Shannon,* 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *Scognamiglio,* 202 Conn. 18, 28, 519 A.2d 607 (1987); *State* v. *Wolff,* supra.

Therefore, we must determine if the instructions given by the trial court "were so deficient as to implicate the constitutional right of the defendant to a fair trial. A jury instruction conforms with constitutional requirements if it provides jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . An instruction that fails to satisfy these requirements [violates] the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution." (Citations omitted; internal quotation marks omitted.) *State* v. *Wolff,* supra, quoting *State* v. *Avila,* 223 Conn. 595, 602–603, 613 A.2d 731 (1992); *State* v. *Plude,* 30 Conn. App. 527, 537, 621 A.2d 1342, cert. denied, 225 Conn. 923, 624 A.2d 824 (1993); see also *Gemme* v. *Goldberg,* 31 Conn. App. 527, 547–48, 626 A.2d 318 (1993).

"The due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *State* v. *Roque,* 190 Conn. 143, 157, 460 A.2d 26 (1983). "If justice is to be done . . . it is of paramount importance that the court's instruc-

tions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime. . . .'' (Citation omitted; internal quotation marks omitted.) *State* v. *Wolff,* supra; *State* v. *Salz,* 226 Conn. 20, 28, 627 A.2d 862 (1993). In reviewing jury instructions, we must examine the charge as a whole to determine if the jury was adequately guided to a correct verdict. *State* v. *Fleming,* 198 Conn. 255, 268–69, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Wolff,* supra, 531. The instructions '' 'must be correct in law, adapted to the issues presented in the case and sufficient to guide the jury in reaching a verdict.' '' *State* v. *Ray,* 30 Conn. App. 95, 107, 619 A.2d 469, cert. granted, 225 Conn. 919, 625 A.2d 822 (1993); *State* v. *Wolff,* supra. "If injustice was done, '[t]he defendant is entitled to a new trial in such circumstances . . . where he can show that prejudice resulted from the court's actions.' '' *State* v. *Lee,* 32 Conn. App. 84, 105, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), quoting *State* v. *Hernandez,* 218 Conn. 458, 465, 590 A.2d 112 (1991).

The trial court instructed the jury that the only difference between General Statutes §§ 21a-278a (c) and 53a-8 is the age of the person used or employed.[8] This

---

[8] After instructing the jury properly on the first count alleging a violation of General Statutes §§ 53a-8 and 21a-278 (b), the jury charge to the count alleging a violation § 21a-278a (c) was as follows: "Now, you don't get to the second count of the information, unless and until you come to the conclusion that the state has proven the first count beyond a reasonable doubt. . . . And as I said to you in the beginning, the only difference between the first count, accessory to sale, and the second count of using or employing a person under eighteen years of age, is the age. So, if you come to the conclusion that the defendant was not there or that he was not accessory to the sale of narcotics, then your verdict on the first count would be not guilty and, of necessity, your verdict on the second count would be not guilty. You don't get to the second count unless and until you come to the conclusion that the state has proved all of the elements in the first count beyond a reasonable doubt. So, if you come to the conclusion that

instruction creates a reasonable possibility that the jury was misled. The resolution of this issue requires an analysis of the relationship between the two statutes.

"The legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." *Windham First Taxing District* v. *Windham,* 208 Conn. 543, 554, 546 A.2d 226 (1988). In addition, "the court must use common sense in construing statutes and must assume that a reasonable and rational result was intended by the promulgating legislature." Id., 553; *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 589, 590 A.2d 447 (1991). Further, we must presume that when the legislature uses different language, the legislature intends a different meaning of one statute from the other. See *Pierce* v. *Albanese,* 144 Conn. 241, 247, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). When we interpret penal statutes, they " 'are to be construed strictly and not extended by implication to create liability which no language of the act purports to create.' " *State* v. *Lubus,* 216 Conn. 402, 406, 581 A.2d 1045 (1990), quoting *State* v. *Roque,* supra, 151.

The language of the two statutes is different. Section 21a-278a (c) is violated where a defendant "employs, hires, uses, persuades, induces, entices or coerces," whereas § 53a-8 is violated where a defendant "solicits, requests, commands, importunes or intentionally aids . . . ." It is obvious from the words used that the statutes are not the same.

the state has proved all of those elements beyond a reasonable doubt in the first count and find the defendant guilty, then you go to the second count and make the following determination [the judge read General Statutes § 21a-278a (c)]. So use the same thing. The only difference now is age. So, if you get to the second count, then you must consider whether or not the state has proven beyond a reasonable doubt that John Gains was under the age of eighteen at the time of the transaction."

" 'In the absence of ambiguity, statutory language should be given its plain and ordinary meaning.' " *Vachon* v. *General Dynamics Corporation,* 29 Conn. App. 654, 657, 617 A.2d 476 (1992), cert. denied, 224 Conn. 927, 619 A.2d 852 (1993). " '[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' " *Cato* v. *Cato,* 226 Conn. 1, 6, 626 A.2d 734 (1993); *Vachon* v. *General Dynamics Corporation,* supra. "Employs, hires, uses, persuades, induces, entices or coerces" requires the accused actually to utilize another person.[9] Alternatively, "solicits, requests, commands, importunes or intentionally aids" requires only an asking or insistence that an act be done. The accused, however, must be "more than a mere inactive companion."[10] *State* v. *Littles,* 31 Conn. App. 47, 53, 623 A.2d 500 (1993); 5 Connecticut Practice, D. Borden

---

[9] "Employ" means " 'to make use of the services of; to have or keep at work; to give employment to; to intrust with some duty or behest.' " *Lutkevicz* v. *Brennan,* 128 Conn. 651, 652, 25 A.2d 66 (1942); *Perez* v. *Mount Sinai Hospital,* 7 Conn. App. 514, 517, 509 A.2d 552 (1986); see also Black's Law Dictionary (6th Ed. 1990). "Hire" means "to purchase the temporary use of a thing, or to arrange for the labor or services of another for a stipulated compensation"; "Use" means "to convert to one's service; to employ; to avail oneself of; to utilize"; "Persuade" means "to induce one by argument, entreaty, or expostulation into a determination, decision, conclusion, belief, or the like; to win over by an appeal to one's reason and feelings, as into doing or believing something"; "Induce" means "to bring on or about . . . an act or course of conduct"; "Entice" means "to lure, induce, tempt, incite, or persuade a person to do a thing"; "Coerce" means "to compel to compliance . . . ." Black's Law Dictionary, supra.

[10] "Solicits" means " 'to entreat; importune . . . to approach with a request or plea; to seek . . . actively.' " *Bigelow Co.* v. *Waselik,* 133 Conn. 304, 306, 50 A.2d 769 (1946); see also Black's Law Dictionary (6th Ed. 1990). "Request" means "to ask for something . . . to solicit"; "Command" means "to direct, with authority." "Importune" means "to press or urge with troublesome persistence." Webster's Collegiate Dictionary (10th Ed. 1993). "Aid" means to "support, help, assist or strengthen"; "Intentionally" means to do something purposely . . . ." Black's Law Dictionary, supra.

& L. Orland, Criminal Jury Instructions (1986) § 5.3. The two statutes are distinct and require the jury to find each element of the two statutes beyond a reasonable doubt.

The instruction by the trial court that the two statutes are the same except for the requirement of age is not a correct statement of the law. The instruction neither provided the jurors with a clear understanding of the elements of the crime charged nor afforded them proper guidance for their determination of whether those elements were present. Thus, the instruction violated the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.

The judgment of guilty of violating § 21a-278a (c) is reversed and the case is remanded for a new trial on that count of the information.

In this opinion the other judges concurred.