STATE OF CONNECTICUT *v.* CLETUS AZIEGBEMI
(AC 28231)

Bishop, McLachlan and Borden, Js.

Argued September 9—officially released November 18, 2008

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Dennis J. O'Connor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Cletus Aziegbemi, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit risk of injury to a child in violation of General Statutes §§ 53a-49 (a) (2) and 53-21 (a) (1). On appeal, the defendant claims that (1) the

evidence was insufficient to sustain his conviction of attempt to commit risk of injury to a child under the "situation" prong of § 53-21 (a) (1), and (2) § 53-21 (a) (1) is unconstitutionally vague as applied in this case. We affirm the judgment of the trial court.

On the basis of evidence presented at trial, the jury reasonably could have found the following facts. On May 18, 2005, as the fourteen year old female victim, P,[1] was walking home from school at approximately 3 p.m., the defendant drove alongside her in a dark red Jeep. P noticed that the defendant was wearing a "black" baseball cap, a red shirt and a gold chain. She also noticed that the defendant's face was severely pockmarked. The defendant was wearing his seat belt. Speaking though his open passenger side window, he asked P, "why do you look so mad?" She replied, "because I am mad." At the time, the defendant's Jeep was approximately three feet away from P. The defendant told P that she "was pretty" and asked if he could be "a friend" to her. P replied, "of course not." The defendant asked P if she knew where he lived. P replied, "I don't even know you." The defendant then pointed in the direction of his neighborhood and told P on what street he lived. As P approached the corner, where she intended to cross the street, her path was blocked by a large bush. At this point, the defendant drove less than one foot away from P, cornering her between the bush and his vehicle. The defendant reached out of the passenger side window and grabbed P by the wrist and neck, and pulled her off of her feet and partially into the Jeep. P resisted, striking the defendant in the head with an empty tin Altoids container. The defendant then released P, and she ran home.

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of attempt to commit risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

On May 19, 2005, P and her mother went to police headquarters and worked with Detective Paul Lombardo to assemble a composite representation of the defendant. P also viewed an automotive Internet site and selected a Jeep that closely resembled the defendant's vehicle. After departing from police headquarters, P and her mother drove around the area where the incident occurred, looking for the defendant. Eventually, P observed the defendant's vehicle parked on the side of the road. P told her mother that she "was 100 percent certain" that the driver was the man who accosted her. P's mother began following the defendant's vehicle and called the police, who dispatched several units to assist her. P's mother followed the defendant into the parking lot of an apartment complex, where he parked and began unloading groceries. Several patrol units arrived and detained the defendant. When Lombardo arrived at the scene, P identified the defendant as the man who accosted her, reiterating that she was "100 percent certain" it was him.

As described by the victim, the defendant's face was heavily pockmarked, and he was wearing a gold neck chain. After the defendant consented to a search of his vehicle, the police recovered a navy blue Red Sox baseball cap.

The defendant was subsequently charged, in count one, with attempt to commit kidnapping in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-94 (a); in count two with unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a); in count three with attempt to commit risk of injury to a child in violation of §§ 53a-49 (a) (2) and 53-21 (a) (1); and in count four with assault in the third degree in violation of General Statutes § 53a-61 (a) (1). The defendant was found guilty on count three and acquitted of all other charges. The court sentenced the defendant to a total effective term of imprisonment of eight years, suspended after fifty-one months, followed

by five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to sustain his conviction of attempt to commit risk of injury to a child in violation of §§ 53a-49 (a) (2) and 53-21 (a) (1).[2] We disagree.

We begin by setting forth the applicable standard of review. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Owens*, 100 Conn. App. 619, 635, 918 A.2d 1041, cert. denied, 282 Conn. 927, 926 A.2d 668 (2007).

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the

---

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proved and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Outlaw*, 108 Conn. App. 772, 777, 949 A.2d 544, cert. denied, 289 Conn. 915, 957 A.2d 880 (2008).

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Na'im B.*, 288 Conn. 290, 296–97, 952 A.2d 755 (2008).

Section 53-21 (a) (1) prohibits, inter alia, a person from wilfully placing a child younger than age sixteen in such a situation that may injure the child's health or impair the child's morals. We are mindful that "§ 53-21 (a) (1) is broadly drafted and was intended to apply to *any* conduct, illegal or not, that foreseeably could result in injury to the health of a child." (Emphasis added.) *State* v. *Scruggs*, 279 Conn. 698, 724–25, 905 A.2d 24 (2006). Injuries to a child's "health" include injuries to her psychological or mental health. See *State* v. *Payne*, 240 Conn. 766, 770–76, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004). As our Supreme Court has observed, this offense is a general intent crime. See, e.g., *State* v. *McClary*, 207 Conn. 233, 240, 541 A.2d 96 (1988); *State* v. *Reid*, 85 Conn. App. 802, 809–10, 858 A.2d 892, cert. denied, 272 Conn. 908, 863 A.2d 702 (2004).

Thus, "[i]t is not necessary, to support a conviction under § 53-21, that the [accused] be aware that his conduct is likely to impact a child younger than the age of sixteen years. Specific intent is not a necessary requirement of the statute. Rather, the intent to do some act coupled with a reckless disregard of the consequences . . . of that act is sufficient to [establish] a violation of the statute." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 173, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

In this instance, the defendant was charged with and convicted of attempt to commit risk of injury to a child. To establish the crime of attempt to commit risk of injury to a child under the "situation" prong of § 53-21 (a) (1), the state must prove that the defendant took a substantial step wilfully or unlawfully to cause or permit a child younger than age sixteen to be placed in a situation in which the life or limb of the child was endangered, the health of the child was likely to be

injured or the morals of the child were likely to be impaired. See *State* v. *Na'im B.*, supra, 288 Conn. 297. In general terms, "[a] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime, and thus the finder of fact may give weight to that which has already been done as well as that which remains to be accomplished before commission of the substantive crime. . . . In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." (Internal quotation marks omitted.) *State* v. *Sorabella*, supra, 277 Conn. 180–81.

The defendant does not dispute that there was evidence adduced at trial that P was younger than the age of sixteen at the time of the incident. The defendant argues, however, that (1) in light of Connecticut's case law regarding § 53-21 (a) (1), no rational jury could have concluded that his behavior vis-a-vis P was an attempt to create a situation that would impair her physical or psychological well-being in violation of the statute and (2) the jury's verdict finding him not guilty of attempt to commit kidnapping in the second degree, unlawful restraint in the first degree and assault in the third degree indicates that the jury rejected P's claim that he had grabbed her and tried to pull her into his vehicle.

Relying primarily on *State* v. *Winot*, 95 Conn. App. 332, 897 A.2d 115, cert. granted, 279 Conn. 905, 901 A.2d 1229 (2006), and *State* v. *Schriver*, 207 Conn. 456, 542 A.2d 686 (1988), the defendant argues that a rational juror familiar with Connecticut case law regarding the scope and purpose of § 53-21 (a) (1) could not conclude

that he violated the statute because his conversation with P was not sexually explicit or threatening. We are unpersuaded.

The case at hand is distinguishable from *Winot* and *Schriver*, in which the defendants' convictions of violating § 53-21 (a) (1) were reversed on the ground that the acts involved were of insufficient severity to constitute a risk of injury. Those cases were decided *solely* on the "act" prong of § 53-21 (a) (1). The "act" prong requires proof that the defendant directly perpetrated an act injurious to the child's moral or physical well-being on the actual person of the child. See, e.g., *State* v. *Padua*, 273 Conn. 138, 148, 869 A.2d 192 (2005). In contrast, the "situation" prong requires proof only that the defendant created or permitted a situation inimical to the moral or physical welfare of the child. Id. In *Winot*, the "act" was a forcible pull on the victim's arm, and in *Schriver*, the defendant's "act" was to grab the waist of a fully clothed thirteen year old girl while saying something sexually suggestive. Although this court in *Winot* and our Supreme Court in *Schriver* found those two circumstances not violative of the "act" prong § 53-21 (a) (1), here we confront a different character of conduct that the jury reasonably could have found is proscribed by the "situation" prong of § 53-21 (a) (1). As noted, the record reveals that the defendant engaged the victim in flirtatious conversation, grabbed her wrist and neck, and attempted to pull her forcibly through his vehicle's open window, endangering her mental health and physical well-being. Pursuant to § 53-21 (a) (1), ample evidence was offered from which the jury reasonably could have concluded that the defendant had attempted to engage P in conduct that would result in injury to her physical well-being or mental health, or the impairment of her morals. See *State* v. *Na'im B.*, supra, 288 Conn. 297.

The defendant also argues that in light of the jury's verdict finding him not guilty of attempt to commit kidnapping in the second degree, unlawful restraint in the first degree and assault in the third degree, the jury rejected P's claim that he grabbed her and tried to pull her into his vehicle. The court did not find that the not guilty verdict on the other counts required the conclusion that the jury rejected or disbelieved any portion of P's testimony. We agree.

In reviewing the sufficiency of the evidence, the evidence in its entirety must be considered in the light most favorable to sustaining the verdict. *State* v. *Owens,* supra, 100 Conn. App. 635. At issue is whether the jury, upon a consideration of the evidence, reasonably could have found that the defendant committed the crime of attempt to commit risk of injury to a child. The fact that a verdict of not guilty was returned on the other counts, which all involved different elements, lends no support to the defendant's claim. The jury could have accepted P's testimony in its entirety but found that the evidence did not support a finding beyond a reasonable doubt as to the other counts.

The defendant further claims that no reasonable juror could have concluded that he lifted P from the ground and partially pulled her into the vehicle as claimed by the victim. The jury, however, did not have to find that the defendant actually succeeded in lifting P and partially pulling her into the vehicle to find him guilty of a criminal attempt to place her in a situation proscribed by § 53-21 (a) (1). The jury could have rejected Ps claim that the defendant succeeded in lifting her off the ground but believed nevertheless that by his conduct, he attempted to create a situation proscribed by § 53-21 (a) (1). As noted, the jury heard evidence that the defendant engaged P in inappropriate conversation, cornered her with his vehicle and attempted to get her into his vehicle. Crediting that testimony alone would

provide the jury with sufficient evidence that the defendant took a substantial step toward placing P in a situation that could impair her health or morals. "To sustain a conviction under the first part of § 53-21 (1), which prohibits a person from causing or permitting a child to be placed in a situation likely to endanger the life or limb of such child or to injure the health or impair the morals of such child, it is not necessary, nor have the courts required, that a defendant touch any part of the victim's body . . . . Rather, the creation of a prohibited situation is sufficient to breach the statute." (Internal quotation marks omitted.) *State* v. *Robert H.*, 273 Conn. 56, 62, 866 A.2d 1255 (2005). Thus, we reject the defendant's sufficiency claim.

## II

Next, the defendant contends that § 53-21 (a) (1) is unconstitutionally void for vagueness as applied to this case. Specifically, he argues that although the "situation" prong is quite broad, it has never been extended to a conversation between an adult male and a teenage girl that did not also include explicit threats or sexual content. The state counters that the challenged section provides fair notice and guidance to the defendant sufficient to allow him to determine whether his conduct was permitted or prohibited. We agree with the state.

We begin by setting forth the relevant legal principles. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. The Connecticut constitution also requires that statutes with penal consequences provide sufficient notice to citizens to apprise them of what conduct is prohibited. . . . The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair

warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties." (Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 157, 921 A.2d 622 (2007).

In challenging the constitutionality of a statute, the defendant bears a heavy burden. To prevail on a vagueness claim, "[t]he defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement. . . . On appeal, a court will indulge in every presumption in favor of a statute's constitutionality. . . . If a penal statute provides fair warning, it will survive a vagueness attack. . . . This court must . . . look to see whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." (Citations omitted; internal quotation marks omitted.) *State* v. *Winot*, supra, 95 Conn. App. 339.

With these principles in mind we turn to the specifics of this case. The defendant waived his constitutional right to remain silent and voluntarily gave a statement to Detective Michael Morrissey. During the interview, the defendant told Morrissey that "sometimes, if I see a girl that I want, I'll say 'you look pretty; you look nice.' " P testified that shortly before attempting to pull her into his vehicle, the defendant told her that she looked pretty and that he wanted to be a friend to her. A person of ordinary intelligence would have understood that this conduct constituted a substantial step in furtherance of the crime of attempt to commit risk of injury

to a child. The defendant, by means of the common and legal meanings of health, impairment, and morals, and through legal precedents, had fair warning that this conduct was violative of the "situation" prong of § 53-21 (a) (1). See *State* v. *Sorabella,* supra, 277 Conn. 174–84; see also *State* v. *Eastwood,* 83 Conn. App. 452, 850 A.2d 234 (2004) (enticing minors to enter vehicle for sexual purposes prohibited under "situation" prong), cert. denied, 286 Conn. 914, 945 A.2d 978 (2008). Furthermore, it was neither unforeseeable nor unreasonable for the jury to conclude that the defendant took a substantial step in a course of conduct planned to culminate in his commission of the crime of risk of injury to a child.

The judgment is affirmed.

In this opinion the other judges concurred.