STATE OF CONNECTICUT *v.* GERALD W. ELLIOTT
(AC 31022)

Lavine, Beach and Lavery, Js.

Argued December 6, 2010—officially released March 22, 2011

*Lauren Weisfeld,* senior assistant public defender, for the appellant (defendant).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Kevin C. Doyle,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Gerald W. Elliott, appeals from the judgment of conviction, rendered after a trial to the court, of attempt to commit risk of injury to a child in violation of General Statutes §§ 53a-49 (a) (1) and 53-21 (a) (1), and attempt to entice a minor to engage in sexual activity in violation of General Statutes §§ 53a-49 (a) (1) and 53a-90a (a). On appeal, the defendant claims that (1) § 53-21 (a) (1) is unconstitutionally vague as applied to him and (2) the evidence adduced at trial was insufficient to support his conviction. We affirm the judgment of the trial court.

The court reasonably could have found the following facts. In August, 2006, Detective Robert Nash of the

Milford police department was working as part of a statewide task force, in conjunction with the Federal Bureau of Investigation, created to investigate crimes against children. Specifically, Nash patrolled Internet chat rooms looking for adults who were attempting to initiate inappropriate sexual relationships with minors. One of Nash's investigative techniques was to create an online "persona" of a minor girl and to communicate with others in online chat rooms in such a manner as to convince them that they were conversing with a young teenage girl. Nash was equipped with technology that enabled him to record and to save any conversations that he had with individuals and any images or videos that he received through another individual's web cam.

On August 11, 2006, Nash entered a Connecticut adult romance chat room using the persona of a fourteen year old girl from Milford with the screen name "Volleygirlct." While in the chat room, the defendant, using the screen name "Jerryatwork24," contacted Volleygirlct and sought a private chat session. The first question the defendant asked Volleygirlct was her age, to which she replied that she was fourteen years old.[1] The defendant stated that he was thirty-seven years old and commented that Volleygirlct was "so young." The defendant then began to initiate a sexually graphic conversation[2] with Volleygirlct. The defendant asked Volleygirlct multiple times if she wanted to watch him expose himself to her through his web cam. The defendant also inquired about Volleygirlct's prior sexual experience and stated that he wanted her to perform

---

[1] The defendant was charged with *attempt* to commit risk of injury to a child and *attempt* to entice a minor to engage in sexual activity because the individual with whom he was speaking was neither a minor nor a child; rather, it was Nash posing as such. See General Statutes § 53a-49 (a) (1).

[2] Because the defendant does not contest the content of his conversations with Volleygirlct, we need not describe the explicit nature of the conversations in detail.

sexual acts on him. Throughout the course of the conversation, the defendant exposed his genitals to Volleygirlct multiple times via his web cam.

From September, 2006, through January, 2007, the defendant engaged Volleygirlct in six additional sexually graphic online conversations.[3] During the course of these conversations, the defendant repeatedly insisted that he wanted to engage in a series of sexually explicit acts with Volleygirlct, including intercourse. The defendant also repeatedly exposed himself to Volleygirlct via his web cam during many of the conversations, often while masturbating, and persisted that he wanted Volleygirlct to expose herself to him. During a conversation on October 4, 2006, upon the request of the defendant, Volleygirlct sent the defendant what she alleged to be an image of herself but was actually an image of an undercover task force agent that was taken when the agent was fourteen years old. Upon receiving the image, the defendant responded by making more sexually explicit statements to Volleygirlct. On two separate occasions, the defendant suggested that Volleygirlct call him so that he could continue the sexually explicit conversations with her over the telephone. The defendant also twice informed Volleygirlct that he previously had engaged in sexual relations with a sixteen year old female.

On October 4, 2006, the defendant suggested that Volleygirlct should meet him in person so they could engage in sexual intercourse in his truck. On December 2, 2006, the defendant again suggested that Volleygirlct should meet him in person and asked if she wanted to "hook up after school next week one day" so they could "kiss and make out" in his truck. Although the defendant suggested that he and Volleygirlct meet

---

[3] These conversations occurred on September 7, October 4, November 28, and December 2 and 21, 2006, and January 23, 2007.

somewhere private, she suggested that they meet at a local coffee shop instead.[4] The defendant suggested that Volleygirlct wear a skirt so that it would be easy to "get to [her]" and also asked her if she would perform oral sex on him in his truck. The defendant and Volleygirlct then agreed on a date and time that they would meet. Nash and other police officers set up surveillance outside the coffee shop on the date of the planned meeting; however, nobody fitting the defendant's description appeared at the location at or around the designated meeting time. The defendant and Volleygirlct engaged in two online conversations following the planned meeting, and neither party mentioned the planned meeting or what prevented the defendant from appearing.

On April 13, 2007, Nash and other police officers executed valid search and seizure warrants at the defendant's home in Old Lyme. The defendant was read his *Miranda*[5] rights, which he knowingly and voluntarily waived. The defendant told Nash that the screen name that he used in Yahoo chat rooms was "Jerryatwork24," and he admitted that he had conversed in one such chat room with a fourteen year old girl from Milford who used the screen name "Volleygirlct." The defendant stated to Nash that he had arranged to meet with Volleygirlct at a strip mall in Milford for the purposes of engaging in sexual activities. The defendant also admitted that paper copies of relevant conversations and web cam images shown to him by Nash, in fact, had been sent by him to Volleygirlct.

The defendant's trial commenced on October 28, 2008. The next day, the court rendered judgment finding the defendant guilty of both attempt to entice a minor to engage in sexual activity and attempt to commit risk

[4] Nash suggested meeting at this location because it was more public and, thus, was better suited for setting up surveillance.

[5] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

of injury to a child. On February 4, 2009, the court sentenced the defendant to a total effective term of ten years incarceration, execution suspended after five years, with three years probation. This appeal followed.

I

The defendant first claims that § 53-21 (a) (1)[6] is unconstitutionally vague as applied to him. Specifically, he argues that because the risk of injury statute does not specifically provide that the conduct he engaged in was prohibited and there allegedly exists no case law from which he could discern that his conduct was prohibited, the risk of injury statute is unconstitutionally vague as applied to him under the facts of this case. We disagree.

We begin by setting forth the standard of review and legal principles that govern the defendant's claim. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. . . . A defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not raise a facial vagueness challenge to the statute. . . .

"[T]he defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived

[6] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement. . . . The proper test for determining [whether] a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute . . . . [O]ur fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited . . . . References to judicial opinions involving the statute . . . may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *Thomas W.*, 115 Conn. App. 467, 472–73, 974 A.2d 19, cert. granted on other grounds, 294 Conn. 911, 983 A.2d 276 (2009).

Our Supreme Court has recognized that "[i]t is not necessary that [§ 53-21] list the precise actions prohibited by it. Penal laws may be general and prohibit a wide range of conduct; the constitution requires no more than reasonableness of certainty." *State* v. *Eason*, 192 Conn. 37, 47, 470 A.2d 688 (1984), overruled in part on other grounds by *Paulsen* v. *Manson*, 203 Conn. 484, 491, 525 A.2d 1315 (1987). The risk of injury statute, therefore, is necessarily somewhat broad such that it can encompass a vast variety of circumstances that reasonably may be considered harmful to children. See *State* v. *Aziegbemi*, 111 Conn. App. 259, 265, 959 A.2d 1, cert. denied, 290 Conn. 901, 962 A.2d 128 (2008). Ultimately, "[o]ur fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited . . . ." (Internal quotation marks omitted.) *State* v. *Stuart*, 113 Conn. App. 541, 562, 967 A.2d 532, cert. denied, 293 Conn. 922, 980 A.2d 914 (2009).

In the present case, the court held that "each act of [the defendant] exposing his genitals on the web cam to a person he believes to be a fourteen year old girl is an attempted risk of injury under the situation prong of . . . [§ 53-21 (a) (1)], and . . . case law amply establishes that." The defendant argues that because the statute does not make it apparent that such conduct is prohibited and "there exist no factually similar prior cases from which to extract a judicial gloss," § 53-21 (a) (1) is unconstitutionally vague as applied to him under these circumstances.[7] We are not persuaded.

We conclude that the statutory language of § 53-21 (a) (1), in addition to significant precedential authority, provided the defendant with sufficient notice that exposing himself to a fourteen year old girl via his web cam and masturbating in her view was prohibited by § 53-21 (a) (1). The risk of injury statute prohibits wilfully creating a situation in which the morals of a child are likely to be impaired. General Statutes § 53-21 (a) (1). This court repeatedly has held that conduct similar to that in the present case is prohibited by the risk of injury statute. *State* v. *Thomas W.*, supra, 115 Conn. App. 474 (holding that defendant masturbating in kitchen where six year old child could observe him violated § 53-21 [a] [1]); *State* v. *Cutro*, 37 Conn. App.

---

[7] In addition to determining that the defendant's exposing himself to Volleygirlct violated § 53-21 (a) (1), the court determined that the defendant's attempt to arrange a meeting with Volleygirlct for the purpose of engaging in sexual activity also violated § 53-21 (a) (1). The defendant, therefore, also claims that § 53-21 (a) (1) is unconstitutionally vague as applied to him because there exists no case law that put him on notice that attempting to arrange a meeting with a child to engage in sexual activity is prohibited by the statute. Because we conclude that § 53-21 (a) (1) is not unconstitutionally vague as applied to the defendant, as he had adequate notice that exposing himself to a child over a web cam is prohibited, we need not address the defendant's separate claim that § 53-21 (a) (1) is unconstitutionally vague as applied to him because he did not have notice that attempting to arrange a meeting with a child for the purpose of engaging in sexual activity is prohibited.

534, 541, 657 A.2d 239 (1995) (holding that defendant masturbating in vehicle in mall parking lot while aware fourteen year old girl could see him violated risk of injury statute); *State* v. *Erzen,* 29 Conn. App. 591, 595–96, 617 A.2d 177 (1992) (holding that defendant exposing his genitals to two eight year old girls violated risk of injury statute). Accordingly, we conclude that a person of ordinary intelligence would comprehend that the defendant's conduct was prohibited by § 53-21 (a) (1).

We are not persuaded by the defendant's argument that *Thomas W., Cutro* and *Erzen* are factually distinguishable from the present case because the defendant was not in the physical presence of Volleygirlct but, rather, exposed himself to her over the Internet. The defendant claims that because the exposure took place online, his conduct was "wholly devoid of the coercion inherent in risk of injury scenarios." He further maintains that because Volleygirlct had to take affirmative steps to accept his web cam videos and images, the victim was not an "unwitting or unwilling recipient." Section 53-21 (a) (1) requires only that the defendant wilfully causes or permits a child to be placed in a situation likely to impair his or her morals; the statute does not require an element of coercion and does not provide that the victim be in the defendant's physical presence, nor does it require that the victim be an unwilling one. The defendant has not provided any legally meaningful distinction between a defendant exposing himself to a child in person and doing so over the Internet. Accordingly, we conclude that the text of § 53-21 (a) (1) and the previously mentioned cases provided the defendant with sufficient notice that his conduct was prohibited under § 53-21 (a) (1).

II

The defendant finally claims that the evidence adduced at trial was insufficient to support his conviction. Specifically, he claims that the state did not prove

beyond a reasonable doubt that he (1) attempted to commit risk of injury to a child and (2) attempted to entice a minor to engage in sexual activity. We disagree.

We begin by setting forth our standard of review. "Appellate analysis of [a sufficiency of the evidence claim] requires us to undertake a well defined, twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the [trier of fact's] verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the [trier of fact] could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . .

"While the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier of fact] to conclude that a basic fact or an inferred fact is true, the [trier of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [trier of fact] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt

does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [trier of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Edwin M.*, 124 Conn. App. 707, 723–24, 6 A.3d 124 (2010), cert. denied, 299 Conn. 922, 11 A.3d 151 (2011).

A

Having determined that § 53-21 (a) (1) is not unconstitutionally vague as applied to the defendant, we first consider the defendant's claim that the state adduced insufficient evidence to prove beyond a reasonable doubt that he attempted to commit risk of injury to a child.

To convict the defendant of attempt to commit risk of injury to a child in violation of §§ 53a-49 (a) (1)[8] and 53-21 (a) (1),[9] the state must prove beyond a reasonable doubt that, if the circumstances were as the defendant believed them to be, he wilfully or unlawfully caused or permitted a child under the age of sixteen years to be placed in such a situation that the life or limb of such child was endangered, the health of such child was likely to be injured or the morals of such child were likely to be impaired, or did any act likely to impair the health or morals of any such child. As our Supreme

---

[8] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be . . . ."

[9] See footnote 6 of this opinion.

Court has observed, risk of injury to a child is a general intent crime. *State* v. *Aziegbemi*, supra, 111 Conn. App. 265. Thus, it is "not necessary, to support a conviction under § 53-21, that the [accused] be aware that his conduct is likely to impact a child younger than the age of sixteen years." Id.

The defendant's argument supporting his insufficiency claim is essentially the same as discussed in part I of this opinion, namely, that because the defendant's conduct occurred online and not in the physical presence of Volleygirlct, the state failed to produce sufficient evidence to convict him of attempt to commit risk of injury to a child. Having already determined in part I of this opinion that the defendant's conduct is prohibited by § 53-21 (a) (1), we conclude that the state provided sufficient evidence to prove beyond a reasonable doubt that the defendant committed attempt to commit risk of injury to a child.

At trial, the state produced evidence showing that the defendant believed that the individual with whom he was conversing in the chat room was a fourteen year old girl. The state further provided evidence of several recorded web cam videos in which the defendant can be seen exposing his genitals to Volleygirlct. These videos showed both the date and the time that they were recorded. The dates and times of the web cam videos all corresponded to separate online chat sessions between the defendant and Volleygirlct, corroborating the fact that the defendant was exposing himself during the online conversations. These videos support the court's conclusion that the defendant's act of exposing himself on the web cam to Volleygirlct was a violation of the statute. Accordingly, we conclude that the state produced sufficient evidence to prove beyond a reasonable doubt that the defendant attempted to commit risk of injury to a child.[10]

---

[10] The defendant also argues, in the alternative, that the court erred in determining that he did not abandon the attempt to commit risk of injury

B

We next consider the defendant's claim that the state produced insufficient evidence to prove beyond a reasonable doubt that he attempted to entice a minor to engage in sexual activity. We are not persuaded by the defendant's claim.

Our determination of this claim depends on the meaning of the phrase "entice . . . to engage in . . . sexual activity" as used in § 53a-90a (a). Section 53a-90a (a) provides in relevant part: "A person is guilty of enticing a minor when such person uses an interactive computer service to knowingly persuade, induce, entice or coerce any person under sixteen years of age to engage in . . . sexual activity for which the actor may be charged with a criminal offense. . . ." The defendant argues that the plain meaning of the phrase "entice . . . to engage in . . . sexual activity" requires that a defendant actually engage in sexual activity with a minor to be convicted under § 53a-90a (a). The state argues that the plain meaning of the phrase merely requires that a defendant tries to, but need not succeed in, engaging a minor in sexual activity. We agree with the state.

"[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory

to a child. Specifically, he argues that because he never actually attended the meeting he arranged with Volleygirlct, he abandoned any attempt to engage in sexual activity with her. Because we determined that there was sufficient evidence to convict the defendant of attempt to commit risk of injury to a child on the basis of his exposing himself to Volleygirlct, we need not address the defendant's abandonment claim.

language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *In re A.R.*, 123 Conn. App. 336, 339, 1 A.3d 1184 (2010).

The text of § 53a-90a (a) is clear and unambiguous. This court previously has defined the word "entice" to mean "to lure, induce, tempt, incite, or persuade a person to do a thing . . . ." (Internal quotation marks omitted.) *State* v. *Harris*, 32 Conn. App. 831, 841 n.9, 632 A.2d 50 (1993), appeal dismissed, 230 Conn. 347, 644 A.2d 911 (1994). None of these words suggests that one actually must succeed in getting a person to act to have enticed that person. To the contrary, Webster's dictionary defines the word tempt as "to entice or allure to do something . . . to attract, appeal strongly to, or invite . . . to try or test . . . ." Webster's Unabridged Dictionary (2d Ed. 2001). Accordingly, the plain meaning of the word "entice" does not require that an individual actually succeed in convincing a person to act for an enticement to have occurred. Therefore, it is not necessary that a defendant actually engage in sexual activity with a minor to be convicted under § 53a-90a (a).

Having determined the meaning of the phrase "entice . . . to engage in . . . sexual activity" as used in § 53a-90a (a), we now examine the defendant's sufficiency claim. To convict the defendant of attempt to entice a minor to engage in sexual activity in violation of §§ 53a-49 (a) (1) and 53a-90a (a), the state must prove beyond a reasonable doubt that, if the circumstances were as he believed them to be, the defendant used an interactive

computer service to knowingly persuade, induce, entice or coerce any person under sixteen years of age to engage in prostitution or sexual activity.

At trial, the state produced evidence that showed that the defendant believed he was conversing with a fourteen year old girl in a Yahoo chat room. The state also provided a transcript of the conversation that occurred between the defendant and Volleygirlct on December 2, 2006. During this conversation, the defendant arranged to meet with Volleygirlct for the purpose of engaging in sexual activity. He agreed on a date, time and location for the meeting to occur. Contrary to the defendant's contention, it is of no consequence that he actually did not attend the meeting. Section 53a-90a (a) does not mandate that a defendant actually meet in person with a minor but merely that the defendant induced or enticed a minor to engage in sexual activity. Here, the defendant's December 2, 2006 conversation with Volleygirlct was sufficient evidence to support the court's finding that the defendant enticed Volleygirlct to engage in sexual activity. Accordingly, we conclude that the state produced sufficient evidence to prove beyond a reasonable doubt that the defendant attempted to entice a minor to engage in sexual activity.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

[11] The defendant also argues, in the alternative, that the court erred in determining that he did not abandon the attempt to entice Volleygirlct to engage in sexual activity. Again, he argues that because he did not attend his scheduled meeting with Volleygirlct and made no subsequent attempt to meet with her, he abandoned any attempt to entice her to engage in sexual activity.

General Statutes § 53a-49 (c) provides: "When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

As mentioned, it is not necessary for the defendant actually to have engaged in sexual activity with Volleygirlct to be convicted under § 53a-90a

(a); rather, it is enough that he tried to engage Volleygirlct in sexual activity. Here, the crime of attempt to entice a minor to engage in sexual activity was completed when the defendant scheduled a meeting with Volleygirlct for the purpose of engaging in sexual activity. The situation may be different, by way of illustration, in circumstances in which an attempt pursuant to § 53a-49 (a) (2) is alleged. Finally, even if abandonment logically could be a viable defense in the circumstances presented, the court specifically found that abandonment was not proved.